# EXHIBIT A, TAB 4D



**United States Department of the Interior**

BUREAU OF INDIAN AFFAIRS
~~XXXOEXXXXAREAXXXXXX~~
P.O. BOX 10
PHOENIX, ARIZONA 85001
WESTERN REGIONAL OFFICE

IN REPLY
REFER TO:
Branch of Real Estate Services
(602) 379-6781

MAY 3 1 2000

Honorable Edward D. Manuel
Chairman, Tohono O'odham Nation
P.O. Box 837
Sells, Arizona 85634

Dear Chairman Manuel:

On January 26, 2000, a meeting was held with you, a delegation of the Tohono O'odham Nation (Nation), and the San Lucy District (District), regarding the Nation's request for a waiver of the contiguity requirement of § 6(d) of the Gila Bend Indian Reservation Lands Replacement Act of October 20, 1986, Public Law 99-503, 100 Stat. 1798. At the meeting, the Nation provided us with a copy of its letter dated January 25, 2000, to Secretary Babbitt and a binder containing documents for supporting a waiver of § 6(d) of the Act. The substance of our discussions at the meeting was reduced to writing in our letter of February 1, 2000, to Ms. Dawn Farrison, legal counsel for the San Lucy District. The following week, a Nation and District delegation met with Assistant Secretary Gover on the waiver request.

At the January 26, 2000, meeting, we advised you that because this office has the delegated authority to accept and approve trust acquisitions under the Act, it was our opinion that this office also has the authority to issue the waiver. However, we advised that we would seek the concurrence of the Assistant Secretary-Indian Affairs on this issue.

### Delegation of the Waiver Authority

By memorandum dated April 4, 2000, copy enclosed, Assistant Secretary Gover advised that he had met with the Nation's delegation to discuss the Nation's difficulty in acquiring lands that meet the requirements of § 6(d) of the Act, and on exercising the waiver of the contiguity requirement authorized by the Act. He stated that the Act provides that the Secretary may waive the statutory limitation on the acquisitions if he determines that additional areas are appropriate. He further stated that, unless expressly prohibited by statue from being re-delegated, all authority conferred on the Secretary by Congress is delegated to program managers within the Department of the Interior for implementation. Since this office already has jurisdiction over the Tohono O'odham Reservation and delegated general program authority pursuant to 3 IAM 4.4, Assistant Secretary Gover concurred

(2)

that we have authority to review the circumstances and based on the administrative record to make the determination authorized by § 6(d) of the Replacement Act and waive the contiguity requirement.

We have completed our review of the Nation's January 28, 2000, request and supporting documents. Based on the circumstances and material in our possession, we have concluded that a waiver of § 6(d) of the Act is warranted. The circumstances and justification for the waiver are discussed in detail as follows:

## Background of the Gila Bend Indian Reservation - San Lucy District

The Gila Bend Indian Reservation is part of the Tohono O'odham Nation (Nation). By Executive Order dated December 12, 1882, President Chester A. Arthur created the 22,400-acre Gila Bend Indian Reservation. By Executive Order of June 17, 1909, President William Howard Taft decreased the size of the Gila Bend Indian Reservation to approximately 10,299 acres. The reservation is divided by the Gila River. The Gila Bend Indian Reservation is the historical residence of the Tohono O'odham people of the San Lucy District, a political subdivision of the Nation. Extensive ruins on the lands date back to about 500 A.D. Other sources have dated the Nation's occupancy of the Gila Bend Indian Reservation to 900 A.D.

Due to the flooding caused by the operation of the Painted Rock Dam, completed in 1960 pursuant to the Act of May 17, 1950, 64 Stat. 163, virtually all of the 10,299-acre Gila Bend Indian Reservation was destroyed. In 1964, the United States obtained through condemnation a flowage easement for 7723.82 acres of the reservation (75 per cent of the total acreage), which gave the United States the perpetual right to flood the land and prohibited use of the land for human habitation. The Nation received $130,000 in compensation. The San Lucy District, also known as the San Lucy Village, is located on 40 acres adjacent to Gila Bend, Arizona. Pursuant to the Act of August 20, 1964, Public Law 88-462, 78 Stat. 559, the members of the Gila Bend Indian Reservation living in the village of Sil Murk, which was located within the flood plain created by the construction of the Painted Rock Dam, were relocated to the San Lucy Village.

Major flooding of the reservation occurred in 1978-79, 1981, 1983 and 1984, each time resulting in a large standing body of water. The flooding, which was far greater than expected, destroyed a 750-acre tribal farm and precluded any economic use of reservation lands. In 1981, the Nation petitioned the United States for a new reservation suitable for agricultural development. In 1982, Congress authorized and directed the Secretary of the Interior to exchange lands in the public domain for the reservation lands determined to be unsuitable for agriculture. Southern Arizona Water Rights Settlement Act, P. L. 97-293, 97 Stat. 1274. A subsequent study determined that all of the arable land on the reservation had been made unsuitable for agriculture or for grazing livestock. The Secretary then contracted with the Tribe for a study to identify federal lands within a 100-mile radius of the reservation suitable for agriculture and for exchange. None of the sites were found to be

(3)

suitable in terms of land and water resources. The initial results of the federal study indicated that the costs of land and water acquisition, construction of a water delivery system, and operation and maintenance of the system would exceed $30,000,000. H.R. Rep. No. 851, 99th Cong., 2d Sess. at 6-7.

As a result of this flooding, the Gila Bend Indian Reservation was decreased from its original size of 22,400 acres to the 40 acres at the San Lucy Village and approximately 400 acres of tribal trust land retained for cultural purposes and scattered throughout the original Gila Bend Indian Reservation.

### Gila Bend Indian Reservation Lands Replacement Act of 1986

The Gila Bend Indian Reservation Lands Replacement Act of October 20, 1986, Public Law 99-503, 100 Stat. 1798, was enacted to provide lands suitable for sustained economic and community development to replace 9,880 acres of damaged land located within the Gila Bend Indian Reservation. In Section 2 of the Act, Congress found that Southern Arizona Water Rights Settlement Act had authorized the Secretary to exchange the reservation lands for public lands suitable for farming; that public lands within a 100-mile radius of the reservation suitable for farming would require substantial federal outlays for construction of irrigation systems, roads, education and health facilities; and that the lack of an appropriate land base severely retarded the economic self-sufficiency of the Nation and resulted in chronic high costs for federal services and transfer payments. Section 2(4) provides:

> This Act will facilitate replacement of reservation lands with lands suitable for sustained economic use which is not principally farming and do not require Federal outlays for construction, and promote the economic self-sufficiency of the O'odham Indian people.

Section 4 of the Act provide that if the Nation assigned to the United States all right, title and interest in 9,880 acres of land within the Gila Bend Indian Reservation, the Secretary would pay the Nation $30,000,000, payable in three annual installments of $10,000,000, together with interest. Section 6(a) of the Act provides that the Nation may spend the principal and interest on behalf of the San Lucy District for land and water rights acquisition, economic and community development and relocation costs. Section 6(b) provides that the Secretary is not responsible for the review or approval of the expenditure of the fund "nor shall the Secretary be subject to liability for any claim or cause of action arising from the Tribe's use and expenditure of such moneys." Section 6(c) authorizes the Nation to purchase private lands not to exceed 9,880 acres in the aggregate. Section 6(d) provides:

> The Secretary, at the request of the Tribe, shall hold in trust for the benefit of the Tribe any land which the Tribe acquires pursuant to subsection (c) which meets the

requirements of this subsection. Any land which the Secretary holds in trust shall be deemed to be a Federal Indian Reservation for all purposes. Land does not meet the requirements of this subsection if it is outside of the counties of Maricopa, Pinal, and Pima, Arizona, or within the corporate limits of any city or town. Land meets the requirements of this subsection only if it constitutes not more than three separate areas consisting of contiguous tracts, at least one of which areas shall be contiguous to San Lucy Village. <u>The Secretary may waive the requirements set forth in the preceding sentence if he determines that additional areas are appropriate.</u> (Underlining added.)

Section 7 of the Act provides that "with respect to any private land acquired by the Nation under § 6 and held in trust by the Secretary, the Secretary shall make payments to the State of Arizona and its political subdivisions in lieu of real property taxes."

By agreement dated October 15, 1987, the Tohono O'odham Nation assigned all its right, title and interest to the 9,880 acres and waived and released any claims for water rights or injuries to land or water rights with respect to the Gila Bend Indian Reservation, to take effect upon payment of the $30,000,000 to the Nation. (As indicated above, the Act provided for the payment of $10 million in fiscal year 1988, $10 million in fiscal year 1989 and $10 million in fiscal year 1990, along with interest accrued. According to our records, the Nation was paid $10,700,00 for fiscal year 1988, $11,300,000 for fiscal year 1989, and $12,700,000 for fiscal year 1990).

### Nation's Proposed Acquisition of 1,181-acre Tract Contiguous to Sand Lucy Village

San Lucy Village currently consists of about eighty (80) families, or approximately 788 individuals, on the forty (40) acre parcel. There are 1,314 members enrolled in the District. Many other district members would live at the Village if there were additional land available. A task force created by the District surveyed District members and determined that the majority would prefer to stay in the Gila Bend area, close to their ancestral home, while a minority would prefer land near Phoenix, Tucson or Casa Grande, Arizona, to take advantage of the employment opportunities that would be available to them. The task force recommended to the District Council the purchase of approximately 1,181 acres of undeveloped desert land located west of and adjacent to the current 40 acre San Lucy Village. The land is currently owned by the Gila Bend Investment Group, Ltd. (Group). A map showing the location of San Lucy Village in relationship to the lands owned by the Group and showing the incorporated township of Gila Bend is attached as Exhibit 1. As of the date of the Nation's waiver request, all property which bounds San Lucy Village to the north, south and west is owned by the Group. The land to the east of San Lucy Village is within the corporate limits of the town of Gila Bend and, therefore, cannot be purchased and placed in trust because of the restrictions in § 6(d) of the Act.

(5)

The San Lucy District and the Group have been discussing the price of the subject property for many years. It has been the position of the Group in its dealings with the Nation/San Lucy District to over value the subject property at $3,000 per acre or higher. This is reflected in its letter of October 5, 1991, to the District from Howard O'Brien, President and General Partner of the Group. In that letter Mr. O'Brien stated that he "would take the same amount per acre that San Lucy received on their land." The Group erroneously believes that under the Replacement Act, the Nation was compensated approximately $3,000 per acre for the 9,880 acres taken by the Painted Rock Dam, and that the Nation should pay approximately $3,000 per acre for the undeveloped desert land that the Group has for sale. However, as indicated above, the money was appropriated by Congress not only for land acquisition, but also for water rights acquisition, for economic and community development, and for relocation costs. Appraisals by the District indicate the value of the property to between $850 and $1,000 per acre. Since 1991, the District and Group have had numerous discussions about the purchase of the 1,181 acres. These discussions have been to no avail and it now appears some or all of the land is no longer available since the Group is in active discussions with another potential purchaser. As a consequence, the Nation and the District are of the belief that it is highly unlikely that any agreement can be reached with the Group for the acquisition of any property contiguous to the San Lucy Village.

## Nation's Justification for Waiver of § 6(d)

Resolution No. 99-623 authorized the Nation to make a formal offer to the Group to purchase the 1,181 acres, but also provided the following provisions for the waiver of the two provisions of § 6(d) of the Replacement Act:

> "....WHEREAS, San Lucy District determined that, other than the above referenced Property, there are no other lands which are contiguous to San Lucy Village that are available for purchase at this time. Further, San Lucy District, through its task force and with the assistance of the Nation's land specialist, determined that the parcels of lands available for purchase in Maricopa, Pima or Pinal County are not large enough in acreage to accomplish the purchase of replacement land of up to 9,800 acres through three (3) separate areas of contiguous tracts as provided for under section 6(d) of the Replacement Act. As a result, San Lucy District determined that in order to acquire replacement lands up to 9,880 acres, it is necessary to request the Secretary of the Interior to waive the requirement that one of the areas be contiguous to San Lucy Village and waive the limitation that the parcels consist of three (3) separate areas consisting of contiguous tracts and modify the provision to provide for the purchase of up to five (5) separate areas consisting of contiguous tracts; and
>
> WHEREAS, San Lucy District determined that if, as anticipated for reasons set forth in Resolution No. S.L. 10-96-99, a copy of which is attached hereto as Exhibit 'B'

(6)

and incorporated herein by reference, Gila Bend Investment Group, Ltd. rejects the Nation's offer to purchase the Property, then it is not in San Lucy District's best interests to delay the request for a waiver from the Secretary of the Interior; and by Resolution No. S.L. 10-96-99, San Lucy District requested, pursuant to the Replacement Act, that in the event that the Nation's offer to purchase the Property is rejected by the Gila Bend Investment Group, Ltd., that the Nation promptly request a waiver from the Secretary of the Interior of those provisions of section 6(d) of the Replacement Act that require that one of the areas of replacement lands be located contiguous to San Lucy Village and waive the limitation that the parcels consist of three (3) separate areas consisting of contiguous tracts and modify the latter provision to provide for the purchase of up to five (5) separate areas consisting of contiguous tracts;

WHEREAS, it is in the best interest of San Lucy District and the Nation to have the current Administration of the United States Executive Branch, including the current Secretary of the Interior, consider any waiver request; and...."

As discussed above, § 6(d) of the Replacement Act requires at least one tract of acquired land to be contiguous to San Lucy Village. As discussed above, the only land of substantial size that is contiguous to San Lucy Village and is available for purchase is the approximately 1,181 acres owned by the Group. (Now reduced to 400 available acres, because of other pending sales.) Pursuant to the Replacement Act, the Nation, on behalf of the San Lucy District, in 1988 purchased approximately 3,200 acres of land formerly known as the Schramm Ranch and now known as the San Lucy Farm. If the Nation was successful in purchasing the 1,181 acres, combined with the 3,200-acre San Lucy Farm, the total acquisition would be 4,381 acres. Thus, the Nation would have only one other area in which to purchase the remaining 5,500 acres of replacement lands.

San Lucy District has determined through its task force, with the assistance of the Nation's land specialist, that the parcels of land available for purchase in Maricopa, Pima or Pinal Counties are not large enough in acreage or offered at a price that will enable the acquisition of 9,880 acres of replacement lands in only three (3) tracts as provided for under § 6(d) of the Act. For example, large acreage parcels of undeveloped land located in close proximity to existing communities are being held for subdivision development and are being offered at very high prices. Other large parcels of land, while offered at a less expensive asking price, are irrigated farming lands within the boundaries of groundwater active management areas and are controlled by non-Indian irrigation districts. Experience with the purchase of the aforementioned San Lucy Farm and the delay in placing the Farm property in trust as mandated under § 6(d) of the Replacement Act leaves the Nation and San Lucy wary of purchasing large tracts of farming lands. The task force has determined that most, if not all, farming lands located in Maricopa, Pima and Pinal counties are within the boundaries of non-Indian irrigation district.

(7)

For the reasons set forth above, the Nation requests waiver of the following two provisions of § 6(d) of the Replacement Act:

1. Waiver of the provision that requires that one of the parcel of replacement land be located contiguous to San Lucy Village; and

2. Waiver of the requirement that the replacement lands consist of <u>three</u> separate areas of contiguous tracts. The Nation requests that this provision be modified to provide for the purchase of up to <u>five</u> separate areas of contiguous tracts.

### Evaluation of the Nation's Request for Waiver of § 6(d)

As discussed above, one tract of land to be acquired must be contiguous to the San Lucy Village in order to comply with the requirement of § 6(d) of the Replacement Act. The only land available is land owned by the Gila Bend Investment Group, Ltd., which bounds the Village to the north, south and west. The land east of the Village is within the corporate limits of the town of Gila Bend and cannot be purchased and placed in trust because of the restrictions in § 6(d) of the Act. Throughout the past almost ten years, the Nation/District have been negotiating with the Group to purchase its land. As indicated above, it has been the position of the Group in its dealings to over value the subject property at $3,000 or higher per acre. For that reason, the Nation has advised that it seriously doubts that an agreement will be reached with the Group for an amount which accurately reflects the fair market value of such property unless the contiguity requirement is lifted. The circumstances that the Nation is confronted with--the asking price for the land contiguous to San Lucy Village is over valued by the current owner and the remaining contigous land is within the corporate limits of the town of Gila Bend--justifies the need to waive the contiguity requirement of § 6(d).

In addition, the San Lucy District has determined through its task force and with the assistance of the Nation's land specialist, that the parcels of lands available for purchase in Maricopa, Pima and Pinal Counties are not large enough in acreage so that 9,880 acres of replacement lands can be purchased in only three (3) contiguous tracts as provided for under § 6(d) of the Act. The Nation has advised that large parcels of undeveloped land located in close proximity to existing communities are being held for subdivision development and are being offered at very high prices. The Nation further advises that other large parcels of land, while offered at a less expensive asking price, are irrigated farming lands within the boundaries of groundwater active management areas and are controlled by non-Indian irrigation districts. Thus, the Nation has demonstrated the need to modify the three tracts requirement and that it should be allowed to purchase up to five (5) separate areas of contiguous tracts.

(8)

Accordingly, I find that the Nation has demonstrated a rational basis for its request for a waiver and hereby grant the waiver as authorized by § 6(d) of the Gila Bend Indian Reservation Lands Replacement Act.

Sincerely,

*Larry W. Welch*
Acting Regional Director

Enclosures

