# EXHIBIT A, TAB 4P



**UNITED STATES
DEPARTMENT OF THE INTERIOR
OFFICE OF THE SOLICITOR
PHOENIX FIELD OFFICE**
One Renaissance Square
Two North Central Avenue
Suite 500
Phoenix, Arizona 85004

COMM. (602) 379-4756
(602) 379-4127
FTS: 261-4756
FAX: 261-4127

BIA.PX.3210

May 24, 1991

Memorandum

To:      Area Director, Phoenix Area Office, BIA

From:    Field Solicitor, Phoenix Field Office

Subject: Preliminary Title Opinion for Acquisition in Trust for
         Tohono O'Odham Nation of Schramm Ranch

By memorandum dated May 10, 1988, you requested a preliminary title opinion for the acquisition of the subject property in trust for the Tohono O'Odham Nation. By memorandum of February 19, 1991, you provided us with four Bureau of Indian Affairs (BIA) file folders containing the relevant title information, including the following documents:

   1. First American Title Insurance Policy No. 60,869, including Schedules A and B, in the amount of $6,200,000.00, dated May 3, 1988 at 8:50 a.m.

   2. Warranty Deed dated May 2, 1988 from Schramm Ranches, Inc. to the United States of America in trust for the Tohono O'Odham Nation of Arizona, recorded May 3, 1988, No. 908523, Docket 1525, Page 244, Pinal County, Arizona, purporting to convey a fee estate in seven parcels.

   3. Warranty Deed dated May 2, 1988 from Donald E. Schramm and Nada Lu Schramm to the United States of America in trust for the Tohono O'odham Nation of Arizona, recorded May 3, 1988, No. 908254, Docket 1525, Page 244, Pinal County, Arizona, purporting to convey a fee estate in one parcel.

From an examination of the foregoing and other documents contained in BIA files, it appears that title to seven parcels is still vested in Schramm Ranches, Inc. and title to the remaining parcel is still vested in Donald E. Schramm and Nada Lu Schramm, although the title status is unclear. See Requirement No. 1.

Received
Real Estate Services
MAY 24 1991

## COMMENTS

1. This title opinion has been prepared for use by the United States and its officers. Neither the United States nor the individuals who prepared this opinion make any warranties or representations as to the completeness or accuracy of this opinion to any other party. Any reliance placed upon this opinion by any party other than the United States is entirely at the risk of such party.

## REQUIREMENTS

1. The title status of this property is unclear. The property was deeded directly to the United States of America in trust for the Tohono O'Odham Nation of Arizona. Because the property has not been accepted by the United States in trust, the conveyance is not complete. If conveyance is accepted, title will then be vested in the United States of America in trust for the Tohono O'odham Nation of Arizona. Such acceptance will relate back to the date of the unconditional delivery of the deed by Schramm Ranches, Inc. and the Schramms. See opinion dated April 15, 1991 from the Field Solicitor, Phoenix Field Office to the Area Director, Phoenix Area Office, BIA. Because of the possibility that documents affecting title to this property have been filed after the effective date of the title insurance policy, May 3, 1988, at 8:50 a.m., you should obtain an amended title policy which extends the effective date of the policy to the date of recording of the approved deed.

2. This property is being acquired pursuant to the Gila Bend Indian Reservation Lands Replacement Act, Pub. L. No. 99-503, 100 Stat. 1798 (1986). That Act provides that the Secretary, at the request of the Nation, shall hold in trust for the Nation any land which meets the requirements of subsection 6(d). Because the Act specifies the conditions which must be met for acquisition in trust, the factors ordinarily weighed to determine whether to acquire land in trust, set forth at 25 C.F.R. 151.10, are not applicable. You should first determine and document in writing whether the subject property meets the requirements of the Act. The land must be within the counties of Maricopa, Pinal and Pima and must be outside the corporate limits of any city or town. The total amount of land to be acquired under the Act must consist of not more than three separate areas consisting of contiguous tracts. The Act authorizes the acquisition of a total of 9880 acres. The subject property consists of only 3200.53 acres. You should determine whether this property consists of only one area and whether it consists of contiguous tracts. The requirements in the preceding sentence may be waived if you determine that it is appropriate to do so because the land is sufficiently close together to be managed as

2

an economic unit. You should determine whether this property is contiguous to San Lucy Village. If it is not, this requirement must be met or waived in future acquisitions under the Act.

3. If you determine that the property meets the requirements of section 6(d) of the Act, the title evidence still must comply with the Standards for the Preparation of Title Evidence in Land Acquisitions by the United States issued by the U.S. Department of Justice. 25 C.F.R. 151.12. The Act limits the Secretary's discretion in determining whether to acquire the land in trust, but does not relieve the Nation of the responsibility to acquire good title to the land. Both the warranty deeds and the title insurance policy indicate that this property is subject to the payment of irrigation charges by reason of its inclusion within the Central Arizona Irrigation and Drainage District [the District], a political subdivision of the State of Arizona formed in 1964 for the purpose of providing a supply of irrigation water for agricultural use by constructing and operating irrigation works. Both the deeds and Schedule B of the title insurance policy contain the following exceptions:

> . . . Any charge upon said land by reason of its inclusion in Electrical District Number Four; Central Arizona Water Conservation District; Pinal County Flood Control District; and Central Arizona Irrigation and Drainage District.
>
> . . .
>
> . . . A Memorandum of Understanding and Agreement by and between the Central Arizona Irrigation and Drainage District and DONALD E. and NADA LU SCHRAMM, dated March 26, 1984, recorded June 27, 1984, in Docket 1232, Page 286.

The Memorandum of Understanding and Agreement signed by the Schramms provides that they will pay both a Water Availability Charge (for repayment of capital costs and fixed annual costs) and a Water Use Charge (for acre-feet of water delivered and other variable charges). The Memorandum also provides that the payment obligations are covenants which run with the land and that the landowner, by signing the agreement, expressly creates a first and prior lien on the land to secure the payment of all charges of the District, which lien remains despite any alienation or transfer. The agreement also contains an acknowledgment that the lands will be subject to taxes levied by the District for the purpose of paying debt service on District bonds and to pay other District expenses incurred. The agreement binds the parties, their successors, and any subsequent owner of

the lands. The charges also become a lien under state law. A.R.S. 48-3119 (1988).

The Nation has requested that the United States pay the Water Availability Charge under section 7(a) of the Act, which provides that the United States will make payments to the State or its political subdivisions "in lieu of real property taxes." The charges for 1991 are $218,541.00. By our opinion dated April 15, 1991, we advised you that the irrigation charges were not "real property taxes" for the purposes of the Act. The Nation has filed an action against the Secretary in federal district court, which is still pending. According to information obtained by telephone from William Baker, attorney for the District, the total capital debt attributable to the acreage in San Lucy Farm is $7,701,191.78. This debit consists of $918,127.28 for repayment of bonds, $2,209,359.30 for repayment of the federal reclamation loan, and $4,573,705.20 for repayment for acquisition of groundwater wells. The Nation is entitled to a credit for the Schramm wells acquired by the District in the amount of $4,459,806.00. The total amount owed on behalf of the Schramm Ranch land for the Water Availability irrigation charges is therefore $3,241,385.78. The bonds are repayable over fifteen years, the federal debt over twenty-six years, and the cost of the wells over forty years. Any landowner may pay its proportional share of indebtedness and be released from further levy.

Department of Justice regulations require that, prior to the time of acquisition of the title to the property, all liens against the title must be fully paid and satisfied or adequate provision should be made therefor. Regulations of the Attorney General Promulgated in Accordance with the Provisions of Public Law 91-393 (issued October 2, 1970). This is also true of assessments in special improvement districts which are liens and payable in future installments. Id. Furthermore, it does not appear that Congress intended in the Gila Bend Indian Reservation Lands Replacement Act to require the United States to accept in trust land subject to outstanding liens. The intent of the Act was that the amount paid to the Nation ($30,000,000) would enable the Tribe to acquire full title to land that was not primarily agricultural, so that there would not be any contingent liability on the United States for the construction of a water delivery system. See opinion of April 15, 1991. If this land were accepted in trust subject to the irrigation liens, the liens would survive, but could not be enforced against the United States. United States v. Alabama, 313 U.S. 274 (1941). Central Arizona Irrigation and Drainage District would still have the remedy of withholding water delivery for non-payment of the irrigation charges. That remedy would not, however, compensate the District for the loss of a part of its assessment base for the repayment of the costs of construction of the irrigation delivery system. The District might have a claim for the taking

4

of a compensable property interest under the Fifth Amendment. The duty to pay irrigation charges has been characterized as an equitable servitude, the loss of which is a compensable property interest. United States v. 129.4 Acres of Land, 446 F.Supp. 1, 3 (D. Ariz. 1976), aff'd, 572 F.2d 1385 (9th Cir. 1978). The Act did not authorize the United States to incur such additional liability by the acquisition of land subject to outstanding liens.

Until the Nation has obtained clear title, the Nation has not "acquired" the land within the meaning of section 6(a) of the Act. You should require that the lien be cleared before acceptance of the property in trust.

You may wish to discuss with the Nation possible ways of eliminating the lien and the contingent liability, so that the land may be accepted in trust. As alternatives to complete repayment of the outstanding obligation by the Nation, you may wish to discuss with the Nation the posting of a payment bond for the annual charges, the establishment of an escrow account for the full amount of the outstanding charges, a waiver of tribal sovereign immunity to suit on the debt, or some combination of these which would enable the District to release the lien. You may also wish to discuss the possibility of clarifying legislation which would authorize the United States to accept the land in trust subject to existing liens. Cf. 25 U.S.C. 566(d); 25 U.S.C. 713f(c)(4); 25 U.S.C. 483a.

You should provide a copy of any instrument releasing the lien to this office for review prior to acceptance of the property in trust.

  4. The policy of title insurance names the United States as the insured for the leasehold estates on parcels 8 and 9 which are owned in fee by the State of Arizona. The two leasehold estates were assigned by the grantors to the Tohono O'Odham Nation. There does not appear to be any intent that the United States hold the leasehold interests in trust. The title policy should be amended to reflect that the Tohono O'Odham Nation is the insured as to the title to the two leasehold estates or those interests should be deleted from the insurance policy.

  5. You should understand that the acquisition of this property will be subject to all those general and special exceptions set out in the title policy. In particular, you should determine and document for your files that the special exceptions set out in Schedule B will not interfere with your ability to discharge of your trust responsibilities as to this property.

5

6. You should furnish a certificate of inspection and possession on the subject property, which must include a survey to determine the presence of any hazardous substances on the land.

7. You should assure that all taxes are paid through the date of closing and furnish evidence of such payment for our review.

The documents required above should be furnished for our examination. You are not authorized to go to closing on this tract at this time. Please direct any questions you may have regarding this opinion to Kathleen A. Miller.

Fritz L. Goreham
Field Solicitor

Attachments

6