# EXHIBIT A, TAB 4S

2) *[signature]* 1/27/9

**JAN 24 1992**

Acting
Area Realty Officer, Branch of Real Estate Services

Proposed Acquisition for Gaming Purposes by the Tohono O'odham Nation

Area Tribal Operations Officer - MS 350

This is in reference to your memorandum of January 6, 1992, regarding a November 27, 1991, request by the Papago Agency Superintendent for a Field Solicitor's opinion as to whether it is permissible for the Tohono O'odham Nation (Nation) to establish and conduct gaming activities, under the provisions of the Indian Gaming Regulatory Act, on lands to be acquired by the Nation pursuant to the Gila Bend Indian Reservation Lands Replacement Act of October 20, 1986, 100 Stat. 1798. The Superintendent's memorandum was prompted by an inquiry from the San Lucy District Council, dated November 8, 1991.

The Gila Bend Indian Reservation Lands Replacement Act was enacted to replace lands of the Gila Bend Indian Reservation which had been rendered uninhabitable and unsuitable for agriculture or other economic use by the construction and operation of the Painted Rock Dam, which was completed in 1960 pursuant to the Act of May 17, 1950 (64 Stat. 163). (Due to the construction and operation of the Painted Rock Dam, 9,880 acres of the Gila Bend Indian Reservation was destroyed.) Pursuant to Section 4 of the act, the Secretary of the Interior was directed to pay the Nation $30 million upon the Nation's assignment of its right, title, and interest in the 9,880 acres of destroyed reservation lands to the United States. Pursuant to Section 6, the Nation was authorized to use these funds to purchase private lands situated within the Arizona counties of Maricopa, Pinal and Pima, and outside the corporate limits of any city or town "in an amount not to exceed, in the aggregate, nine thousand eight hundred and eighty acres." The land to be acquired was to consist of "not more than three separate areas consisting of contiguous tracts, at least one of which areas shall be contiguous to San Lucy Village." The land so acquired (in trust status) was "deemed to be a Federal Indian Reservation for all purposes."

By agreement dated October 15, 1987, the Tohono O'odham Nation assigned all its right, title and interest in the 9,880 acres to the United States, and waived and released any claims relative to its former land or water rights on the Gila Bend Indian Reservation, to take effect upon payment of the $30 million to the Nation. (The act provided for the payment of $10 million in FY 1988, $10 million in FY 1989 and $10 million in FY 1990, along with any interest accrued.) It appears from our records that the Nation was paid $10,700,000 for FY 1988 and $11,300,00 for FY 1989. Both payments included interest accrued. It

RECEIVED
JAN 27 1992
PAPAGO A[...]
SELLS ARIZON[...]

further appears that $12,700,000, which included interest accrued, was appropriated for the FY 1990 payment to the Nation.

It should be noted that, pursuant to the Act of August 20, 1964, 78 Stat. 559 (copy attached), the Papago Indians living at the village of Sil Murk, which was within the Painted Rock reservoir flood plain, were relocated to a purchased 40-acre tract of land south of the Reservation known as the San Lucy Village. In 1966, the 40-acre tract was transferred from the Transamerica Title Company to the United States of America in trust for the Papago Indian Tribe of Arizona by two special warranty deeds (copies attached). The acquired lands are described as follows:

 E½NE¼SE¼, Sec. 25, T. 5 S., R. 5 W., G&SRB&M, Arizona, 20 acres.
 (Special warranty deed, dated April 19, 1966, which was approved by the Phoenix Area Director on April 26, 1966, and which deed is recorded as Document No. 609-29 in the Albuquerque Area Land Titles and Records Office.)

 E½SE¼NE¼, Sec. 25, T. 5 S., R. 5 W., G&SRB&M, Arizona, 20 acres.
 (Special warranty deed, dated June 27, 1966, which was approved by the Phoenix Acting Area Director on September 7, 1966, and which deed is recorded as Document No. 609-30 in the Albuquerque Area Land Titles and Records Office.)

The 1964 act provided that title to the replacement site was to be "held by the United States of America in trust for the Papago Indian Tribe," now known as the Tohono O'odham Nation. (It should be noted that the 1964 act did not add the above-described 40 acres to the Gila Bend Indian Reservation, as it existed at that time, and it does not appear that it was ever proclaimed as such.)

All requests to acquire land in trust for gaming purposes must comply with the Indian Gaming Regulatory Act of October 17, 1988 (102 Stat. 2467; U.S.C. 2701 et seq.). Section 20 of the Act (25 U.S.C. 2719) provides that gaming shall be prohibited on land acquired in trust for an Indian tribe after the enactment of the Act, unless the land is _within or contiguous_ to the tribe's reservation boundaries (as such reservation existed on October 17, 1988). It should be noted, however, that this prohibition would not apply if the Secretary of the Interior determines that a gaming facility would serve the best interests of the acquiring tribe and its members, and would not be detrimental to the local community, and the governor of the state in which the land is located concurs in such a determination. This prohibition also would not apply to lands which: (1) are taken in trust as part of a settlement of a land claim; (2) comprise the initial reservation of an Indian tribe acknowledged by the Secretary under the Federal acknowledgment

process; or (3) are acquired on behalf of an Indian tribe that is restored to Federal recognition.

According to the San Lucy District Council's letter of November 8, 1991, the proposed land to be acquired pursuant to the Gila Bend Indian Reservation Replacement Act is "contiguous to San Lucy Village." If the land to be acquired is in fact <u>contiguous</u> with the San Lucy Village (which was purchased in trust for the Tohono O'odham Nation pursuant to the Act of August 20, 1964), and the village lands were part of the reservation on October 17, 1988, it appears that the Nation would not be prohibited from establishing and conducting gaming activities under the provisions of the Indian Gaming Regulatory Act. Even if the proposed land acquisition is <u>not</u> contiguous to reservation lands, we believe that the Nation would not be restricted in establishing and conducting gaming activities because the land so acquired (to replace the Gila Bend Indian Reservation lands that were destroyed due to the construction and operation of the Painted Rock Dam) would be considered to be part of "a settlement of land claims," one of the exceptions to the Gaming Act's general restriction on acquisitions for gaming purposes. It should also be noted that Section 6(d) of the 1986 act provides that land which is acquired by the Nation is to be treated as an Indian reservation "for all purposes," and that this provision would arguably render Section 20 of the Gaming Act inapplicable to any acquisitions to be made under the 1986 act.

We recommend that this issue be presented to the Phoenix Field Solicitor for confirmation of our position. If you have any questions, please do not hesitate to call upon us.

/S/ Stan Webb

Attachments

cc: Superintendent, Papago Agency
    Phoenix Field Solicitor, Attention: Kathleen Miller

