UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TOHONO O'ODHAM NATION,

                              Plaintiff,

                                                      Civil Action No. 1:10-cv-472-JDB

V.

KENNETH L. SALAZAR, in his official
capacity as Secretary of the United States
Department of the Interior,

                              Defendant.

**THE GILA RIVER INDIAN COMMUNITY'S *AMICUS CURIAE* BRIEF
IN SUPPORT OF THE UNITED STATES' MOTION TO TRANSFER TO THE
DISTRICT OF ARIZONA**

The Gila River Indian Community ("Community") supports the United States'

motion to transfer this case to the District of Arizona.  The Community, like the Tohono

O'odham Nation ("Nation"), is a federally recognized Indian tribe located in central

Arizona.  The Community is a deeply interested party in this matter and has significant legal

and equitable interests in the resolution of this case.

As set forth in the United States' motion, this court has broad discretion to grant a

transfer of venue pursuant to 28 U.S.C. § 1404(a), when the balance of public and private

factors show that such a transfer will better serve the interests of justice and provide a more

convenient forum for the parties.  *See e.g., Stockbridge-Munsee Community v. U.S.*, 593

F.Supp.2d 44 (D.D.C. 2009) (approving motion to transfer venue from District of D.C. to

District of New York).  In *Stockbridge-Munsee*, the District Court of D.C. granted a motion

to transfer venue to the District of New York raised by the United States (defendant) in an

action by the Stockbridge-Munsee (plaintiff) challenging the decision by the Department of

the Interior ("Department") to take certain lands into trust in New York for the benefit of

another tribe.  *Stockbridge-Munsee*, 593 F. Supp. 2d at 48.

   The court in *Stockbridge-Munsee* stated that "[c]ourts in this circuit must examine

challenges to . . . venue carefully to guard against the danger that a plaintiff might

manufacture venue in the District of Columbia.  By naming high government officials as

defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere."

*Stockbridge-Munsee*, 593 F. Supp. 2d at 47 (quoting *Cameron v. Thornburgh*, 983 F.2d 253,

256 (D.C. Cir. 1993)).  The court ultimately conferred less deference on the Stockbridge-

Munsee's choice of forum in the District of Columbia because it was not the Tribe's home

forum.  *Id*.  The Tribe argued that the District of Columbia was the more appropriate forum

because the events giving rise to the action (decision to take land into trust) occurred in D.C.

*Id*.  The court rejected this as weighing in favor of the Tribe stating "'[m]ere involvement,'

however, 'on the part of federal agencies, or some federal officials who are located in

Washington, D.C. is not determinative.'"  *Id*. (quoting *Shawnee Tribe v. United States*, 298

F. Supp. 2d 21, 26 (D.D.C. 2002)).  Instead the court found that "[alt]hough the

administrative action at issue in this case arose in Washington, 'the only real connection

[the] lawsuit has to the District of Columbia is that a federal agency headquartered here . . .

is charged with generally regulating and overseeing the [administrative] process.'" *Id*.

(quoting *Deloach v. Philip Morris Co., Inc.,* 132 F. Supp. 2d 22, 25 (D.D.C. 2000)).  The

court also found that since there were other similar cases pending in the New York courts and New York courts had experience in dealing with New York land claim cases, transferring the case would avoid inconsistent results and waste of judicial resources. *Id*. at 48. The Court's decision in *Stockbridge-Munsee* is persuasive and should be applied in this case.

Despite the Nation's attempt to minimize the degree of private interests here, there are significant private factors that weigh in favor of transferring this case. Similar to the result in *Stockbridge Munsee*, the District of Arizona, where the land in question (referred to as the "Glendale Parcel") is located is the more appropriate forum. As in *Stockbridge Munsee*, the only connection this case has to the District of Columbia is the fact that the agency ultimately responsible for approving applications by Indian tribes to obtain land into trust is headquartered there. There is no other nexus tying this case to the District of Columbia. Therefore, like *Stockbridge-Munsee*, the Nation's choice of forum should be given less deference because the District of Columbia is not the Nation's home forum.

Additionally, the Nation's response to the United States' Motion highlights the presence of factual disputes surrounding the Glendale Parcel in this case – facts that arise and relate to land in Arizona. *See e.g.* Tohono O'odham Nation Resp. at 2-3 (DKT 20) (disputing the relevance of a state case involving the Glendale Parcel). In the complaint pending before this court the Nation wrongly argues that the Secretary has a non-discretionary duty to take the Glendale Parcel into trust for the benefit of the Nation if it satisfies the Gila Bend Indian Reservation Lands Replacement Act ("Act" or ("Gila Bend Act"), Pub. L. 99-503, 100 Stat. 1798 (1986). Tohono O'odham Nation Compl. at ¶ 14

3

(DKT 1).  The Nation seeks mandamus relief to compel the Secretary to take certain lands into trust based on its contention that the lands at issue meet the requirements of the Act thereby making the Secretary's decision mandatory and non-discretionary.  *Id.* at ¶¶ 29, 35. There are, however, significant legal arguments regarding whether this statute constitutes a mandatory non-discretional instruction to the Secretary.[1]

Notwithstanding that issue, as a threshold matter, there must be an evaluation and determination of whether the Glendale Parcel satisfies the requirements of the Act.  *See* Pub. L. No. 99-503, § 6(d) (authorizing the Secretary to hold in trust land that the Nation acquires pursuant to the Act which meets the requirements of subsections 6(c), (d)).  Subsection 6(c) and (d) of the Act require land acquired by the Nation to meet the following five elements:

(1)  the lands, in the aggregate, may not exceed 9,880 acres (subsection 6(c));
(2)  the lands may not be outside the counties of Maricopa, Pinal, and Pima, Arizona (subsection 6(d));
(3)  lands may not be within the corporate limits of any city or town (subsection 6(d));
(4)  lands may only constitute not more than three-separate areas of contiguous tracts (the Secretary may waive this requirement), (subsection 6(d)); and
(5)  at least one of the areas of land must be contiguous to San Lucy Village (subsection 6(d)).

---

[1] When reviewed in light of Interior Board of Indian Appeals ("IBIA") decisions and federal court decisions, and the strict adherence by the Department of the Interior and Department of Justice to the narrowest possible construction of what constitutes a mandatory trust acquisition statute, the Act is a discretionary trust acquisition statute.  This is because the Act vests the Secretary with the discretion to acquire more than three separate areas of land, <u>if</u> the Secretary determines it "<u>appropriate</u>" that additional areas of land may be managed as a single economic or residential unit.  *See State of Minnesota v. Acting Midwest Regional Director*, 47 IBIA 122 (2008); *see also Sac & Fox Nation of Missouri v. Norton*, 240 F.3d 1250 (10th Cir. 2001).

Inquiry into whether the requirements of the Act are satisfied will require a fact-specific analysis into each element.  The outcome with respect to four of the five requirements directly hinge on facts specific to Arizona.

The Nation also claims that the Department has only placed one area of land in trust under the Gila Bend Act, thereby making the Glendale Parcel eligible land under the Act.  Yet the Nation fails to point out that a question exists as to whether two parcels that it previously placed in trust fall under the Act.  If the two parcels were both put into trust for the Nation pursuant to the Act, another question exists as to whether the next parcel must be contiguous to San Lucy Village, per the requirement in subsection 6(d) of the Act.  There is no real dispute as to the first parcel of land being acquired under the Act, but the there is as to the second parcel.  The second parcel of land referenced is known as the "Why Property" and is located near Why, Arizona in Pima County.  The United States accepted title to the Why Property on February 24, 2009, under the authority of the Indian Reorganization Act ("IRA"), 25 U.S.C. § 465, despite a prohibition for placing land in trust under the IRA in Section 301 of the Arizona Water Settlements Act ("AWSA"), Pub. L. No. 108-451, 118 Stat. 3536 (2004).  The question of whether the Why Property was actually put into trust pursuant the IRA or the Gila Bend Act will have to be resolved on the merits in this case, because if the Why Property was placed into trust under the Gila Bend Act, the land in Glendale may not be eligible to be put into trust under the Act.  Inquiry into this issue will require an examination of the facts regarding to the Why Property, may require testimony from witnesses involved in its purchase and transfer into trust.  Any witnesses and relevant facts (or documentation thereof) are located in Arizona.

Furthermore, subsection 6(e) of the Gila Bend Act requires that:

> The Secretary shall establish a water management plan for any land which is held in trust under subsection (c) which, except as is necessary to be consistent with the provisions of this Act, will have the same effect as any management plan developed under Arizona law.

Although this does not on its face appear to be a bar to taking land into trust under the Act, in this instance it could eliminate the eligibility of the land in question to be taken into trust. The availability of water on the Glendale Parcel is a significant question, which is very fact specific, and which also raises other issues given the location of the Glendale Parcel.

The Glendale Parcel is located within the Salt River Valley Water Users' Association ("Association") water district area.[2]  Under the Association's articles of incorporation and other documents through which the Glendale Parcel would became member lands within the Association and be entitled to receive stored and developed water from the Salt River Federal Reclamation Project, such lands would be subject to a lien for the payment of annual assessments to cover the Association's operating costs.  But 25 C.F.R. § 151.13 requires that the Secretary examine all liens prior to taking <u>any</u> land into trust for the benefit of an Indian tribe.  If a lien makes title to the land unmarketable, the lien must be removed before title can be accepted.  *Id.*  If a lien can not be removed, the land can not be taken into trust.  *Id.*  Examination into the type of lien asserted by the Association and what that means for purposes of 25 C.F.R. § 151.13 are questions that will be raised on the merits in this

---

[2] The Salt River Valley Water Users' Association is a private corporation. http://www.srpnet.com/about/Facts.aspx (last visited on April 16, 2010).  The Association delivers nearly 1 million acre-feet of water annually to a service area in central Arizona.  *Id.* An extensive water delivery system is maintained and operated by the Association, including reservoirs, wells, canals and irrigation laterals.  *Id.*

case.  For instance, if the Glendale Parcel were taken into trust, a question is raised whether

the lands can be subject to such a lien under section 151.13.  If they cannot be subject to

such a lien, they may not be entitled to continued status as Association member lands which

would terminate their entitlement to receive the delivery of stored and developed water from

the Project.  If no water can be practically delivered to Glendale Parcel, the Secretary will

not be able to meet the requirements of Section 6(e) of the Act, raising serious questions

regarding the eligibility of such lands under the Act.  Resolution of those questions depend

on facts stemming from Arizona, in addition to possible discovery and witnesses that may

need to be obtained from the Association, which is located in Arizona.  For these reasons, as

well as those stated in the United States' Motion, the private factors weigh in favor of

having this case heard in the District of Arizona.

     Significant public factors also weigh in favor of transferring venue to the District of

Arizona.  The outcome of the Nation's application to place the Glendale Parcel in trust

could de-stabilize the balance of Indian gaming in the entire State of Arizona.  In 2003, the

Tribal-State gaming compacts in Arizona were set to expire.  Therefore, beginning in 2000,

some tribal governments in Arizona began negotiating amongst themselves for a new

gaming compact.  Arizona tribes knew that before submitting a Tribal gaming compact

proposal to the State they had to agree on the number of slot machines and the number, size

and location of casinos.  The effort became known as the 17-Tribe Initiative.  The Tohono

O'odham Nation was part of the Initiative.

     After much difficulty, the Tribes carefully-constructed a balance, which was

embodied in State Proposition 202.  Against Proposition 202 were race track owners who

funded and backed Proposition 201, which would have expanded gaming to allow racinos within the urban neighborhoods of the State.  In 2002, the 17-Tribe Initiative (including the Nation), asked the Arizona voters to approve Proposition 202, and reject Proposition 201. Even the Governor of Arizona at the time, Jane Dee Hull, campaigned in favor of Proposition 202 and against Proposition 201.  On the official Proposition 202 ballot, the Governor urged Arizona voters to rely upon the balance, stating, in part:

> I strongly urge you to vote 'YES' on Proposition 202, the '17 Tribe' Initiative. Proposition 202 keeps casinos limited to Indian reservations and limits the number of casinos on reservations . . . Proposition 202 ensures that no new casinos will be built in the Phoenix metropolitan area and only one in the Tucson area for at least 23 years.  Proposition 202 keeps gaming on Indian Reservations and does not allow it to move into our neighborhoods . . . Plain and simple, this is the best gaming proposal for all Arizona citizens.

Arizonans ultimately voted in favor of the carefully-constructed balance offered by the Governor and the 17-Tribe Initiative and approved Proposition 202.[3]  By doing so, the voters of the State preserved the gaming compact structure and ensured that the Phoenix metropolitan area would not turn into another Las Vegas, Nevada.  The Nation, in effect, now seeks to undo Proposition 202 by using the Glendale Parcel for gaming if it is ultimately put into trust.

In addition to the potential for this case to disturb the delicate balance of gaming in the State, it will ultimately result in significant and uncertain impacts on surrounding communities, which include the Gila River Indian Community.  *See e.g.,* Gov. William

---

[3] Initiative Measure (Proposition 202) approved pursuant to the Arizona Constitution in election on Nov. 5, 2002, enacting portions of Chapter 6, Gaming on Indian Reservations, Title 5, Arizona Revised Statutes (Establishes terms of "New standard form of tribal-state gambling compact" and defines "Indian lands" where gaming may be conducted by tribes. A.R.S. § 5-601.02I(3) & (6)).

Rhodes, *Don't Break the Promise of '02 Gaming Pact* (pub. Feb. 23, 2010);[4] Chairman

Ronnie Lupe et. al, *More Tribes Opposing Casino Plan in W. Valley* (pub. Mar. 15, 2010).[5]

Indeed, the City of Glendale is seeking to intervene as a party in this case and if granted,

plans to file a response in support the United's States motion to transfer for many of the

same reasons.  *See* Exh. 2 to City of Glendale's Motion to Intervene (DKT 21) (filed April

12, 2010).   The Community along with other Arizona Indian tribes and local non-Indian

communities have been actively involved in discussions and meetings within the State and

with the Tohono O'odham Nation since it announced its decision to file an application with

the Department to have the lands in the City of Glendale put into trust for its benefit.  *See*

Letter from Leaders of the Five Apache and Yavapai Tribes in Arizona to George Skibine,

Re: Tohono O'odham Nation's Fee-to-Trust Application (April 27, 2009) (Attachment 3).

The Nation should not be permitted to unilaterally shut out the significant public interests

involved here.

By filing this case in the District of Columbia, the Nation is attempting to

manufacture a venue so as to avoid notice to or involvement of the non-Indian community

and other Arizona tribes.  But the interests of justice dictate that such critical issues be

decided before the courts within the State of Arizona, particularly since the Nation was part

of the public promise embodied in Proposition 202; rather than in a jurisdiction unfamiliar

---

[4] Published at azcentral.com (included as Attachment 1).
[5] Published at azcentral.com (included as Attachment 2).

with the landscape and local interests at stake.  The federal[6] and state[7] courts in Arizona

have regularly resolved significant disputes involving Indian gaming.

The District of Arizona, in particular, also has significant experience in dealing with

tribal land claims based on federal statute or executive order within the State. *See e.g.,*

*Masayesva for and on Behalf of Hopi Indian Tribe v. Zah*, 792 F.Supp. 1155 (D.Ariz. 1992)

(interpreting federal statute to determine tribal land claims in Arizona); *Healing v. Jones*,

174 F.Supp. 211 (D.Ariz. 1959) (interpreting executive order to determine tribal land claims

in Arizona).  Thus, the public factors also weigh in favor of transferring venue in this case.

---

[6] *See Yavapai-Prescott Indian Tribe v. Arizona*, 796 F. Supp. 1292 (D. Ariz. 1992) (action to appoint Mediator under Indian Gaming Regulatory Act ("IGRA")) appeal dismissed, No. 92-16954 (9th Cir. 1994) (included proceeding before former Arizona State Supreme Court Chief Justice Frank X. Gordon to select Tribal-State Compacts pursuant to procedures provided in IGRA, 25 U.S.C. § 2710(d)(7)); *Yavapai-Prescott Indian Tribe v. Scott*, 117 F.3d 1107 (9th Cir. 1997) (Federal court jurisdiction affirmed over dispute with Indian tribe regarding gaming contract regulated under IGRA); *American Greyhound Racing, Inc. v. Hull*, 146 F. Supp. 2d 1012 (D. Ariz. 2001) (challenge to types of games authorized in tribal-state gaming compacts); *American Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002) (challenge to tribal-state gaming compacts dismissed for failure to join Indian tribes as indispensable parties); *Arizona Department of Gaming v. Colorado River Indian Tribes*, No. 01-15259, 2001 WL 1646700 (9th Cir. Dec. 21, 2001) (United States District Court has jurisdiction over cause of action by the State to enjoin Class III gaming conducted on Indian lands that does not comply with terms of gaming compact).

[7] *Salt River Pima-Maricopa Indian Community v. Hull*, 190 Ariz. 97, 945 P.2d 818 (Ariz. 1997) (dispute over State demands in compact negotiation regarding location of Indian casino on Indian lands); *Sears v. Hull,* 192 Ariz. 65, 961 P.2d 1013 (Ariz. 1998) (parents of children near proposed gaming facility on Indian lands lack standing to challenge proposed casino under IGRA); *Simms v. Napolitano*, 205 Ariz. 500, 73 P.3d 631 (Ariz. Ct. App. 2003) (Arizona Department of Gaming is authorized to deny applicant request to withdraw application for certification to provide gaming services in Indian gaming operation); *TP Racing LLLP v. Arizona Department of Gaming*, 2010 WL 1328651, ___ P.3d ____ (Ariz. Ct. App. 2010) (sufficient evidence of misconduct for Arizona Department of Gaming to deny certification of proposed vendor of gaming services in Indian gaming operation).

For these reasons, the Gila River Indian Community respectfully joins in the United States Motion to Transfer Venue to the District of Arizona.

Respectfully submitted this 16th day of April, 2010.

       _s/ James T. Meggesto_         
James T. Meggesto, DC Bar No. 459900
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036
(202) 887-4311
jmeggesto@akingump.com

       _s/ Jennifer K. Giff_         
Jennifer K. Giff (AZ Bar #018366)
General Counsel,
Gila River Indian Community
Post Office Box 97
Sacaton, Arizona 85147
(520) 562-9760
Jennifer.giff@gric.nsn.us

### CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of April, 2010, I electronically filed the

foregoing document with the Clerk of the Court using the following e-mail provided by the

Clerk's office:  dcd_cmecf@dcd.uscourts.gov.  I also hereby certify that I caused a true and

correct copy of the following document to be served by via electronic mail and overnight

mail to counsel for all parties, including the City of Glendale, at the following addresses:


**Seth P. Waxman**
**Danielle Mary Spinelli**
**Edward C. DuMont**
Wilmer Cutler Pickering Hale & Dorr
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
seth.waxman@wilmerhale.com
danielle.spinelli@wilmerhale.com
edward.dumont@wilmerhale.com

**Kristofor R. Swanson**
**Joseph N. Watson**
U.S. Department of Justice, ENRD
P.O. Box 663
Washington, D.C. 20044
kristofor.swanson@usdoj.gov
joseph.watson@usdoj.gov


**Audrey Elaine Moog**
Hogan & Hartson LLP
555 Thirteenth Street, NW
Washington, D.C. 20004-1161
amoog@hhlaw.com


_s/ James T. Meggesto_
James T. Meggesto, DC Bar No. 459900
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036
(202) 887-4311

# ATTACHMENT 1



## Don't break promise of '02 gaming pact

*8 comments by William Rhodes - Feb. 23, 2010 12:00 AM*
*Special for the Republic*

Before I became the governor of the Gila River Indian Community, I built a career in law enforcement. I spent years working for the Maricopa County Sheriff's Office and later serving as a judge. Those experiences taught me about the law.

The law is a promise. In fact, the law is the most important promise society can make, because laws keep us in balance and preserve the greater good.

Indian gaming is a promise like that.

The promise of tribal gaming was agreed upon in 2002, between the Arizona voters who passed Proposition 202 and the 17 tribes who supported the initiative. The voters spoke clearly: They supported limited tribal gaming, restricted to traditional reservation lands away from neighborhoods. The tribes spoke clearly, too: We agreed to state oversight of casinos and to contribute up to 8 percent of our annual revenues to the state.

Thanks to that promise, both sides have benefitted. Tribes (even non-gaming tribes) have an economic engine to rebuild our homelands and improve our quality of life. Arizonans have seen the benefits of more than $600 million in tribal contributions, which have funded education, health care, wildlife conservation and communities.

Now, though, the promise is under attack, from the inside and the outside.

In 2003, the Tohono O'Odham Nation of southern Arizona used a dummy corporation to buy land in Glendale, more than 150 miles north of their government seat. Last year, this tribe petitioned the federal government to declare the parcel at 91st Avenue and Northern as part of its reservation. If approved, despite a location close to homes, churches and schools, the tribe plans to build the state's largest casino.

The city of Glendale opposes this plan. So do the mayors of Buckeye, Goodyear, Litchfield Park, Surprise and Youngtown. So does Sen. Jon Kyl, Sen. John McCain, Gov. Jan Brewer, and Congressmen John Shadegg and Trent Franks. So do at least a half-dozen tribes across Arizona. All of us believe this land isn't eligible to be taken into trust, that it's an unsuitable site for a casino and that it breaks the promise of Proposition 202.

All of us agree with how then-Gov. Jane Hull explained the promise of tribal gaming to voters. "Voting 'yes' on Proposition 202 ensures that no new casinos will be built in the Phoenix metropolitan area . . . for at least 23 years," she said. "Proposition 202 keeps gaming on Indian Reservations and does not allow it to move into our neighborhoods."

Advertisement



**Mom Dilemma #36:**
Your daughter insists on wearing her princess costume to the grocery store. Allow it or not?

YES, at least she's dressed!

NO, I have some rules!

momslike me .com

Print Powered By [FormatDynamics]

Don't break promise of '02 gaming pact


ARIZONA'S HOME PAGE

The Tohono O'Odham tribe isn't alone in wanting to expand casino gambling in Arizona. The owners of horse and dog tracks also want casinos.Their sales pitch today is much like the outlandish proposal they floated in 2002, when they lost at the ballot by a 4-to-1 margin: Arizona needs tax dollars. Off-reservation casinos will mean "hundreds of millions of dollars" to the state.

Never mind that gambling revenues are down. Never mind that this expansion would change Arizona into Las Vegas East. Never mind that this would invalidate the compacts that have produced $600 million in tribal contributions since 2004.

Those who would break the promise see profits where we see limited gaming and the rule of law. We, their opponents, believe promises are more than just words. We believe any promise that helps us all is a promise that absolutely must be kept.

**William Rhodes is governor of the Gila River Indian Community.**

Copyright © 2009, azcentral.com. All rights reserved. Users of this site agree to the Terms of Service and Privacy Policy/Your California Privacy Rights

Advertisement



Print Powered By [FormatDynamics]

# ATTACHMENT 2



ARIZONA'S HOME PAGE

# More tribes opposing casino plan in W. Valley

*Mar. 15, 2009 12:00 AM*
*Editor's note: In January, the Tohono O'odham Nation of southern Arizona announced plans to build a casino-resort on 134 acres near Glendale. The announcement came as a surprise to many, including the leaders of other Arizona tribes with gaming compacts. In February, the Gila River Indian Community raised objections to the proposal. Now, in this* Republic *exclusive, the leaders of four other gaming-compact tribes declare their objections, as well.*

As leaders of four Apache and Yavapai tribes, we participated in the successful 2002 campaign to pass the 17 Tribes Initiative, which provided tribes with the exclusive right to operate casino gaming in exchange for sharing gaming revenue with state and local governments.

Since 2003, Arizona gaming tribes have contributed more than $483 million to education, health care , wildlife conservation, tourism promotion and assistance to local governments. The 17 Tribes Initiative also limited the number, size and location of future casinos. We promised Arizona voters that casino gaming wouldn't encroach into Arizona cities and towns and would stay well away from neighborhoods, churches and schools. We have kept those promises.

Also on the 2002 ballot was a proposition sponsored by the dog- and horse-racing industry to turn their facilities into "racinos" by giving them the right to operate slot machines. Arizona voters emphatically rejected the tracks' ballot measure by more than 4-1. Despite the voters' verdict, the racetracks are back, seeking to exploit Arizona's budget crisis by pushing legislation that would convert Arizona racetracks into full-blown casinos. They are promising to generate huge amounts of revenue for the state.

What they aren't telling voters is that, under the terms of the tribal-state gaming agreements, allowing racetracks to install slot machines would result in significant legal consequences. By law, tribal-revenue sharing with state and local governments will be reduced by over 80 percent if racetracks are converted into racinos. Furthermore, all limitations on the size and number of tribal casinos would be lifted. In short, Arizona would be transformed overnight into Las Vegas. The bitter irony is that, faced with competition from unlimited casinos on Indian lands, racetracks would generate only a small fraction of the payments to the state they are promising.

The state wouldn't benefit, but the wealthy out-of-state racetrack owners will be

Advertisement

Loan Modification DVD + Software

as seen on CNN MSNBC CNBC TV YAHOO!

MODIFY YOUR MORTGAGE YOURSELF
*A COMPLETE STEP BY STEP GUIDE*

Visit GetYourLoanModDVD.com Now!

Print Powered By FormatDynamics



laughing all the way to the bank.

We are not at all surprised that the racetracks would cynically seek to invalidate the will of the voters, but we are dismayed that the Tohono O'odham Nation has turned its back on the promises we made to voters in 2002 by seeking to convert land it purchased in the West Valley into a huge casino-resort. It is our reluctant conclusion that the Tohono O'odham Nation, which is headquartered southwest of Tucson , was less than forthcoming about its plans with the people of Arizona, with Glendale and with every other Arizona tribe. The Tohono O'odhams' planned casino would be near existing Glendale neighborhoods and across the street from Raymond S. Kellis High School .

This proposal clearly violates the spirit of the 17 Tribes Initiative passed by Arizona voters in 2002, and undermines the promises we made to the people of Arizona.

Tribes rely on gaming revenue to fund essential services to our tribal members as we continue the hard work of reversing the impacts of more than a century of abject poverty.

Indian gaming has provided tribes with the ability to not only provide essential and critical services to tribal members but has also given tribes the ability to share the

wealth of Indian gaming with local cities and towns by supporting local schools, organizations, tourism, economic development and other community priorities.

We, as Arizona tribes, believe we made a commitment to the people of the state and the people of the state made a commitment to us. Both the people of Arizona and tribes have honored our commitments to each other.

Unraveling those commitments is not only bad policy, it would result in economic injury to both the people of Arizona and Arizona tribes. For these reasons, the undersigned four Arizona tribes are compelled to voice their opposition to both proposals.

-Ronnie Lupe , *chairman, White Mountain Apache Tribe*

- Clinton M. Pattea , *president, Fort McDowell Yavapai Nation*

-Thomas Beauty , c *hairman, Yavapai-Apache Nation*

- Ivan Smith , c *hairman, Tonto Apache Tribe*

Advertisement



Loan Modification DVD + Software

as seen on  CNN  MSNBC  CNBC  TV  YAHOO!

MODIFY YOUR MORTGAGE YOURSELF
*A COMPLETE STEP BY STEP GUIDE*

Visit GetYourLoanModDVD.com Now!

Print Powered By FormatDynamics

# ATTACHMENT 3



April 27, 2009

George Skibine
Assistant Secretary for Indian Affairs
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C. 20240

Re: Tohono O'odham Nation's Fee-to-Trust Application for the Development of
Gaming on Land in Glendale, Arizona

Dear Mr. Skibine:

As leaders of five Apache and Yavapai tribes in Arizona, we are writing in opposition to the Tohono O'odham Nation's fee-to-trust application for approximately 135 acres in Glendale, Arizona based on the Tohono O'odham Nation's intended use of the land for the development of a casino. Enclosed are resolutions adopted by each of our councils stating the reasons for our opposition. Also enclosed is our guest editorial which appeared in the Arizona Republic's March 15, 2009 edition.

Each of our gaming enterprises draws significant patronage from the Phoenix metropolitan area. Should the Tohono O'odham Nation, which is headquartered 160 miles south of their proposed Glendale casino site, have its application approved, each of our tribes would sustain economic losses.

It is of further concern to us that the proposed Glendale casino violates promises that seventeen tribes, including the Tohono O'odham Nation, made to Arizona voters in 2002 during our successful campaign to enact Prop. 202, which among other provisions authorized extending the term of our gaming compacts by twenty three years. In an effort to limit the potential negative impacts of casino gaming within Arizona's major urban areas, the sponsoring tribes of Prop. 202 promised that the number of casinos in the Phoenix area would not exceed the seven in existence in 2002 through the duration of the compacts' extended term. Breaking faith with Arizona voters inevitably will damage tribes' public credibility. We have relied on strong public support for tribal gaming in the past, but risk losing that support if voters don't believe we have kept our word.

– 2 –                                                                    April 27, 2009

We would very much appreciate the opportunity to discuss with you in greater detail our objections to this application. We will contact your office in the next few days to follow up on this request.

Sincerely,

Dr. Clinton M. Pattea
President
Fort McDowell Yavapai Nation

Ronnie Lupe
Chairman
White Mountain Apache Tribe

Thomas Beauty
Chairman
Yavapai-Apache Nation

Wendsler Nosie
Chairman
San Carlos Apache Tribe

Ivan Smith
Chairman
Tonto Apache Tribe

Cc:

The Honorable John McCain
United States Senate
241 Russell Senate Office Building
Washington, D.C. 20510-030

The Honorable Jon Kyl
United States Senate
730 Hart Senate Office Building
Washington, D.C. 20510-0304

– 2 –                                                April 29, 2009

We would very much appreciate the opportunity to discuss with you in greater detail our objections to this application. We will contact your office in the next few days to follow up on this request.

Sincerely,

Dr. Clinton M. Pattea                      Ronnie Lupe
President                                  Chairman
Fort McDowell Yavapai Nation               White Mountain Apache Tribe

Thomas Beauty                              Wendsler Nosie
Chairman                                   Chairman
Yavapai-Apache Nation                      San Carlos Apache Tribe

Ivan Smith
Chairman
Tonto Apache Tribe

Cc:

The Honorable John McCain
United States Senate
241 Russell Senate Office Building
Washington, D.C. 20510-030

The Honorable Jon Kyl
United States Senate
730 Hart Senate Office Building
Washington, D.C. 20510-0304

$-2-$                                      April 27, 2009

We would very much appreciate the opportunity to discuss with you in greater detail our objections to this application. We will contact your office in the next few days to follow up on this request.

Sincerely,

Ronnie Lupe
Chairman
White Mountain Apache Tribe

Dr. Clinton M. Pattea
President
Fort McDowell Yavapai Nation

Thomas Beauty
Chairman
Yavapai-Apache Nation

Wendsler Nosie
Chairman
San Carlos Apache Tribe

Ivan Smith
Chairman
Tonto Apache Tribe

Cc:

The Honorable John McCain
United States Senate
241 Russell Senate Office Building
Washington, D.C. 20510-030

The Honorable Jon Kyl
United States Senate
730 Hart Senate Office Building
Washington, D.C. 20510-0304

– 2 –                                                                April 27, 2009

    We would very much appreciate the opportunity to discuss with you in greater detail our objections to this application. We will contact your office in the next few days to follow up on this request.

                                             Sincerely,


Dr. Clinton M. Pattea                        Ronnie Lupe
President                                    Chairman
Fort McDowell Yavapai Nation                 White Mountain Apache Tribe


Thomas Beauty                                Wendsler Nosie
Chairman                                     Chairman
Yavapai-Apache Nation                        San Carlos Apache Tribe


Ivan Smith
Chairman
Tonto Apache Tribe


Cc:

The Honorable John McCain
United States Senate
241 Russell Senate Office Building
Washington, D.C. 20510-030

The Honorable Jon Kyl
United States Senate
730 Hart Senate Office Building
Washington, D.C. 20510-0304

We would very much appreciate the opportunity to discuss with you in greater detail our objections to this application. We will contact your office in the next few days to follow up on this request.

Sincerely,

Dr. Clinton M. Pattea
President
Fort McDowell Yavapai Nation

Ronnie Lupe
Chairman
White Mountain Apache Tribe

Thomas Beauty
Chairman
Yavapai-Apache Nation

Wendsler Nosie
Chairman
San Carlos Apache Tribe

Ivan Smith
Chairman
Tonto Apache Tribe

Cc:

The Honorable John McCain
United States Senate
241 Russell Senate Office Building
Washington, D.C. 20510-030

The Honorable Jon Kyl
United States Senate
730 Hart Senate Office Building
Washington, D.C. 20510-0304

– 3 –

April 27, 2009

The Honorable Raul Grijalva
United States House of Representatives
1440 Longworth House Office Building
Washington, D.C. 20515-0307

The Honorable Gabrielle Giffords
United States House of Representatives
1728 Longworth House Office Building
Washington, D.C. 20515-0308

The Honorable Ann Kirkpatrick
United States House of Representatives
1123 Longworth House Office Building
Washington, D.C. 20515-0301

The Honorable Trent Franks
United States House of Representatives
2435 Rayburn House Office Building
Washington, D.C. 20515-0302

The Honorable John B. Shadegg
United States House of Representatives
436 Cannon House Office Building
Washington, D.C. 20515-0303

The Honorable Ed Pastor
United States House of Representatives
2465 Rayburn House Office Building
Washington, D.C. 20515-0304

The Honorable Harry Mitchell
United States House of Representatives
1410 Longworth House Office Building
Washington, D.C. 20515-0305

The Honorable Jeff Flake
United States House of Representatives
240 Cannon House Office Building
Washington, D.C. 20515-0306

The Honorable Jan Brewer
Governor of Arizona
1700 West Washington
Phoenix, Arizona 85007

– 4 –                                                                                April 27, 2009

Allen Anspach, Regional Director
Western Regional Office
Bureau of Indian Affairs
PO Box 10
Phoenix, AZ 85001

Ernest Stevens, Jr., Chairman
National Indian Gaming Association
North 7210 Cemetery Road
Oneida, WI 54155



# Fort McDowell Yavapai Nation

P.O. Box 17779, Fountain Hills, AZ 85269     Phone (480) 837-5121     Fax (480) 837-1630

President Dr. Clinton Pattea     Vice President Bernadine Burnette     Treasurer Pamela Mott
Council Member Paul Russell     Council Member Ruben Balderas     Council Secretary Pansy Thomas

## RESOLUTION OPPOSING THE PROPOSED EXPANSION OF NON-INDIAN GAMING OFF OF INDIAN TRIBAL TRUST LAND BY THE STATE OF ARIZONA AND OPPOSING THE PROPOSED TOHONO O'ODHAM CASINO IN MARICOPA COUNTY ARIZONA

### Resolution No. Ft. McD. 2009- 22

**WHEREAS,** the Fort McDowell Yavapai Nation (Nation) is a federally recognized Indian tribe and a sovereign nation; and,

**WHEREAS,** the lands wherein the proposed Tohono O'odham Casino is to be located are the aboriginal tribal lands of the Yavapai people; and,

**WHEREAS,** the governing body of the Nation is the Fort McDowell Tribal Council ("Tribal Council") which directly oversees the operation of Tribal government and Tribal enterprises; and,

**WHEREAS,** the functions of Tribal Council also include duties as the political, ministerial, corporate and public representatives of the Nation; and,

**WHEREAS,** the Nation and the State of Arizona negotiated a Gaming Compact which was approved by a majority of the citizens of the State of Arizona in an election held in 2001; and,

**WHEREAS,** the voter Gaming Compact provided for exclusivity of Class III gaming in the State to Indian lands held in trust; and,

**WHEREAS,** the Nation and the other Indian Tribes in Arizona negotiated with the State and each other to limit Indian gaming by limiting the number of casinos, Class II and Class III machines, facility maximums, and types of gaming to be allowed under the express terms of the voter approved Gaming Compact; and,

**WHEREAS,** the City of Phoenix Metro Tribes carefully negotiated these limits with the State and each other to limit gaming and also to insure the negotiated terms would not adversely impact the individual Tribes in the Phoenix Metro area; and,

**WHEREAS,** the proposed expansion of gaming to off-reservation racinos would violate the terms of the voter approved compact and would end the limited gaming approved by the voters both on and off Indian lands, reduce the ability of the State to regulate gaming and would end the limits on types of gaming, facility sizes, and machine limits on Tribal lands; and,

1

**Resolution NO. Ft. McD. 2009-22 Cont. OPPOSING NON-INDIAN OFF RESERVATION GAMING AND TOHONO O'ODHAM'S PROPOSED GLENDALE CASINO**

**WHEREAS,** the Tribal leaders in the greater Phoenix Metro area negotiated the limits on machines, facility sizes, and casinos and each gave up rights to number of casinos or Class III machines or both of them as part of the Compact negotiation process; and,

**WHEREAS,** the negotiations and agreements were openly negotiated and discussed amongst the Tribal leaders participating in the negotiations with the State to include terms that resulted that no more than seven (7) casinos would be operated in the Phoenix Metro area as evidenced by the four Phoenix Metro Tribes each agreeing to give up one casino in order to limit gaming and to ensure that each of the four Tribes would not be seeking to injure the economy of each other; and,

**WHEREAS,** the proposed Tohono O'odham Glendale facility was not contemplated by the Tribes or the State in negotiating the terms of the Compact and the Tohono O'odham Nation did not raise the possibility of building a Casino in the Phoenix Metro area which would adversely impact on the economies of the Phoenix Metro Tribes and the Arizona Tribes located in the Payson, Prescott and Camp Verde areas during Compact negotiations; and,

**WHEREAS,** the Fort McDowell Yavapai Nation has determined that the proposed expansion of gaming by permitting non-Indian gaming off Indian lands by permitting racinos to operate is a violation of the 2002 Compact and is in opposition to the voters wishes as evidenced by their resounding rejection of racinos in 2001 state-wide election; and,

**WHEREAS,** the Fort McDowell Yavapai Nation has concluded that the proposed Tohono O'odham Nation Casino in Glendale Arizona does not reflect the intent of the negotiations for the 2002 Compact between the State and the Tribes and the amongst the Phoenix Metro Tribes; and

**WHEREAS,** the proposed Glendale casino does equate with the Tribe and State intent for limited gaming communicated to the voters on behalf of the 17 Tribe's initiative.

**NOW THEREFORE, BE IT RESOLVED,** that upon review and consideration of the State legislation proposing up to 5 racinos, the Fort McDowell Yavapai Nation states its opposition to the legislation as a violation of the 2002 Compact and the wishes of the voting citizens of the State of Arizona;

**BE IT FURTHER RESOLVED,** that the proposed Tohono O'odham casino to be located in the City of Glendale is opposed by the Fort McDowell Yavapai Nation as it is in opposition of the initiative prepared by the 17 Arizona Tribes and communicated to the voters of the State of Arizona that voted to approve that initiative.

2

**Resolution No. Ft. McD. 2009-** _22_ **Cont.  OPPOSING NON-INDIAN OFF RESERVATION GAMING AN TOHONO O'ODHAMS PROPOSED GLENDALE CASINO**

**FINALLY BE IT RESOLVED,** that the Fort McDowell Yavapai Nation holds that it negotiated in good faith with the four Phoenix Metro Tribes, other Tribes, and with the State on machines, facility sizes and the number of Casino facilities to be located in the Phoenix Metro area; and, therefore oppose the proposed Glendale casino in that it is in opposition to the good faith efforts of the Tribal leaders to provide for economic development for their respective Tribes and their intent to communicate the Tribes' support of limited gaming to the voters of Arizona.

### CERTIFICATION

Pursuant to the authority contained in Article V, Sections 13(A)(1) and (15), and 13(B)(1) and (2) of the Constitution of the Fort McDowell Yavapai Nation, ratified by the Tribe on October 19, 1999 and approved by the Secretary of the Interior on November 12, 1999, the foregoing Resolution was adopted this _10_ day of _March_ 2009 at a Special Tribal Council Meeting held at Fort McDowell at which a quorum of _4_ members were present, _1_ absent, by a vote of _3_ for and _0_ opposed and _0_ abstained.

Dr. Clinton M. Pattea
President, Tribal Council

Date: _3/10/09_

Pansy Thomas
Tribal Secretary

3

TO: 00000000000          P.1/3

### SAN CARLOS APACHE TRIBE
### SAN CARLOS APACHE INDIAN RESERVATION
### SAN CARLOS, ARIZONA
### RESOLUTION

NO:   MR-09-051

### A Resolution Opposing Off-Reservation and Non-Indian Gaming and Opposing a Proposed Casino Resort Development by the Tohono O'odham Tribe

**WHEREAS:** The San Carlos Apache Tribe("Tribe") is a federally recognized Indian Tribe organized pursuant to the provisions of the Indian Reorganization Act of 1934, (48 Stat. 984); and,

**WHEREAS:** The San Carlos Apache Tribal Council ("Council") is empowered to represent the San Carlos Apache Tribe and act on all matters that concern the health and welfare of the Tribe; and

**WHEREAS:** Representative Andrew M. Tobin (Arizona District 1) has announced his intentions to introduce legislation that would allow slot machines to be operated out of existing horse and dog track racing venues throughout the State of Arizona, converting the race and dog tracks into "racinos" and potentially allowing for 1,500 slots per race track; and

**WHEREAS:** Passage of any law allowing for racinos would directly violate the voter approved Proposition 202 which provides for Indian-gaming exclusivity in the State of Arizona, triggering the "poison pill" provision of the State of Arizona Tribal gaming compacts, resulting in the elimination of Indian gaming restrictions on the number and type of games and gaming facilities a Tribe could operate, and severely reducing the amount of revenue Tribes pay to the State and local governments for needed programs; and

**WHEREAS:** In January 2009, the Tohono O'odham Nation announced its plans to develop a 1.2 million square foot casino and resort project within the geographic boundaries of the City of Glendale, to include 150,000 square feet of gaming space, 1,089 gaming machines, 50 table games, 24 poker tables and a 1,000 seat bingo hall plus convention, hotel and retail space; and

**WHEREAS:** Development of the Tohono O'odham Nation casino resort, by virtue of its projected size and location within the City of Glendale, violates the spirit of Proposition 202 in that Tribes promised the People of the State of Arizona that Indian Gaming would be limited in size, scope and location and would operate exclusively on Indian reservation land; and

1

**WHEREAS:** Announcement of the Tohono O'odham Nation casino project has fueled support for off-reservation and non-Indian gaming horse and dog track racinos; and

**WHEREAS:** The prospect of racinos operating throughout the State of Arizona, along with the proposed development of the Tohono O'odham Nation casino resort, pose a direct and imminent threat to the economic viability of the San Carlos Apache Tribe's gaming operations as well as that of other Arizona Tribes, in particular the member Tribes of the Apache Rural Coalition, and would also negatively impact the State of Arizona and local communities who currently benefit from revenue sharing generated by Indian gaming; and

**WHEREAS:** On March 4, 2009, the Tribal Leadership of the Apache Rural Coalition met to discuss the threat of the proposed racinos and Tohono O'odham Nation casino resort project; and

**WHEREAS:** The Apache Rural Coalition shared mutual alarm over these developments and, as a result, identified several action items in response, including sending a joint Apache Rural Coalition letter to the Arizona Republic editorial section (*draft letter is attached as Exhibit A*) and sponsoring a voter survey within Maricopa County to measure whether the public opinion, either in favor or opposition to the horse and dog tracks being converted into racinos, is influenced by the proposed Tohono O'odham Nation casino resort development; and

**WHEREAS:** The voter survey is estimated to cost approximately $20,000.00; the cost to be borne equally amongst the Apache Rural Coalition Tribes who choose to participate in the study; and

**WHEREAS:** The Council finds that it is in the best interest of the Tribe to adopt unequivocal opposition to the development of any and all off-reservation and non-Indian gaming in the State of Arizona and equally opposes the proposed Tohono O'odham Nation casino project for the reasons stated herein.

**NOW THEREFORE BE IT RESOLVED,** that the San Carlos Apache Tribal Council adopts unequivocally, the opposition to off-reservation and non-Indian gaming in the State of Arizona, presently proposed in the form of slot machines within horse and dog track race venues throughout the State.

**BE IT FURTHER RESOLVED,** that the San Carlos Apache Tribal Council opposes the proposed Tohono O'odham Tribe casino project in that it violates the spirit of Proposition 202 thereby fueling support for off-reservation and non-Indian gaming.

**BE IT FURTHER RESOLVED,** that the San Carlos Apache Tribal Council approves participation of the Tribe in a voter survey targeted to measure whether the public opinion of Maricopa County regarding off-reservation, non-Indian gaming is influenced by the proposed Tohono O'odham Tribe casino resort development, and furthermore, approves to share an equal prorated amount of the total cost, estimated at $20,000.00, amongst the Apache Rural Coalition Tribes.

**BE IT FINALLY RESOLVED,** that the San Carlos Apache Tribal Council approves and adopts the Joint Apache Rural Coalition letter, in the form attached as *Exhibit A*, and authorizes the Chairman to execute and deliver the attached letter, in its final form, to the editorial section of the Arizona Republic newspaper.

### CERTIFICATION

I, the undersigned Secretary of the San Carlos Apache Tribal Council, hereby certify that the Tribal Council is presently composed of 11 members, of whom __10__, constituting a quorum, were present at a Council meeting held this __13th__ day of __March__, 2009, and that the foregoing Resolution No. __MR-09-051__ was duly adopted, by a vote of __7__ FOR; __0__ OPPOSED; and __0__ ABSTAINED; of the Tribal Council pursuant to Article V, Section 1(a) of the Amended Constitution and Bylaws of the San Carlos Apache Tribe effective February 24, 1954.

Tribal Council Secretary

3



## Tonto Apache Tribe

Tonto Apache Reservation #30
Payson, Arizona 85541
Telephone: (928) 474-5000
Fax: (928) 474-9125

### RESOLUTION NO. 09-10
### OF THE GOVERNING BODY OF THE
### TONTO APACHE TRIBAL COUNCIL
### (A Federally Recognized Indian Tribe)
### PAYSON, ARIZONA

WHEREAS, the Tonto Apache Tribe (the "Tribe") is a federally recognized tribal government; and

WHEREAS, under Article IV, Section 1 of the Tribe's Constitution, the Tonto Apache Tribal Council (the "Council") is the governing body of the Tribe; and

WHEREAS, the Tribe has entered into a Tribal-State Gaming Compact with the State of Arizona (the "Compact"); and

WHEREAS, the Tribe owns and operates the Mazatzal Hotel and Casino on its Reservation near Payson, Arizona; and

WHEREAS, the Tribe's Hotel and Casino provide necessary revenues for tribal programs and services and provides employment opportunities for tribal member, their families and residents of the Payson area; and

WHEREAS, the Hotel and Casino attracts customers and business from the Phoenix metropolitan area, including communities on the west side of Phoenix; and

WHEREAS, private horse and dog-racing tracks throughout Arizona and seeking the right to create slot machines casinos at their facilities; and

WHEREAS, the Tohono O'odham Nation, headquartered near Tucson, Arizona, has recently announced plans to develop a large casino hotel complex on the west side of the Phoenix metropolitan area, near Glendale, Arizona; and

WHEREAS, the race tracks' proposal would trigger the "poison pill" provision of the tribal gaming compacts with the State, allowing tribes to operate unlimited gaming on their reservations and eliminating much of the tribes' revenue sharing with the State; and

WHEREAS, the Tohono O'odham's proposed west side casino project would destabilize the gaming market in the Phoenix metropolitan area, creating major problems for all of the gaming tribes, urban and rural, that rely on that market for a share of their business, including the Tonto Apache Tribe; and

WHEREAS, the Tonto Apache Tribe wishes to go on record in opposition to both the race tracks' proposal and the Tohono O'odham proposal.

NOW THEREFORE BE IT RESOLVED that the Tonto Apache Tribal Council hereby:

1.  Opposes any effort to allow the horse and dog-racing tracks in Arizona to operate slot machines or other electronic gaming devices at their facilities.

2.  Opposes the proposal by the Tohono O'odham Nation to develop a casino hotel project on the west side of the Phoenix metropolitan area near Glendale, Arizona.

3.  Authorizes the Tribal Chairperson or, in his absence, the Vice-Chairperson, to take such action as may be necessary or appropriate to make the Tribe's opposition to these projects known to tribal officials, public officials, elected officials and the general public.

## CERTIFICATION

I, the undersigned, as Chairperson of the Tonto Apache Tribal Council do hereby certify that the Tribal Council of the Tonto Apache Tribe at Payson, Arizona is composed of five (5) members of whom __5__ were present at a Regular/Special Meeting, held on this __10th__ day of __March__, 2009, and that the foregoing Resolution was duly adopted by the affirmative vote of _five(5)_ members of the Tribal Council.

Ivan Smith, Tribal Chairperson

Attested by:

Sabrina Campbell, Tribal Council Secretary

Resolution No. 03-2009-68



# RESOLUTION OF THE
# WHITE MOUNTAIN APACHE TRIBE OF THE
# FORT APACHE INDIAN RESERVATION

### (Opposing Off-Reservation and Non-Indian Gaming and Opposing a Proposed Casino Resort Development by the Tohono O'odham Nation)

**WHEREAS,** pursuant to Article IV, Section 1(a) of the Constitution of the White Mountain Apache Tribe, *inter alia*, the Tribal Council has the authority to represent the Tribe and act in all matters that concern the welfare of the Tribe; and

**WHEREAS,** Representative Andrew M. Tobin (Arizona District 1) has announced his intentions to introduce legislation that would allow slot machines to be operated out of existing horse and dog track racing venues throughout the State of Arizona, converting the race and dog tracks into "racinos" and potentially allowing for 1,500 slots per race track; and

**WHEREAS,** Passage of any law allowing for racinos would directly violate the voter approved Proposition 202 which provides for Indian-gaming exclusivity in the State of Arizona, triggering the "poison pill" provision of the State of Arizona-Tribal gaming compacts, resulting in the elimination of Indian gaming restrictions on the number and type of games and gaming facilities a Tribe could operate, and severely reducing the amount of revenue Tribes pay to the State and local governments for needed programs; and

**WHEREAS,** In January 2009, the Tohono O'odham Nation announced its plans to develop a 1.2 million square foot casino and resort project within the geographic boundaries of the City of Glendale, to include 150,000 square feet of gaming space, 1,089 gaming machines, 50 table games, 24 poker tables and a 1,000 seat bingo hall plus convention, hotel and retail space; and

**WHEREAS,** Development of the Tohono O'odham Nation casino resort, by virtue of its projected size and location within the City of Glendale, violates the spirit of Proposition 202 in that Tribes promised the People of the State of Arizona that Indian Gaming would be limited in size, scope and location and would operate exclusively on Indian reservation land; and

**WHEREAS,** Announcement of the Tohono O'odham Nation casino project has fueled support for off-reservation and non-Indian gaming horse and dog track racinos; and

**WHEREAS,** The prospect of racinos operating throughout the State of Arizona, along with the proposed development of the Tohono O'odham Nation casino resort, pose a direct and imminent threat to the economic viability of the White Mountain Apache Tribe's gaming operations as well as that of other Arizona Tribes, in particular the member Tribes of the Apache Rural Coalition, and would also negatively impact the State of Arizona and local communities who currently benefit from revenue sharing generated by Indian gaming; and

**WHEREAS,** On March 4, 2009, the Tribal Leadership of the Apache Rural Coalition met to discuss the threat of the proposed racinos and Tohono O'odham Nation casino resort project; and

1

Resolution No. 03-2009-68

**WHEREAS,** The Apache Rural Coalition shared mutual alarm over these developments and, as a result, identified several action items in response, including sending a joint Apache Rural Coalition letter to the Arizona Republic editorial section (*draft letter is attached as Exhibit A*) and sponsoring a voter survey within Maricopa County to measure whether the public opinion, either in favor or opposition to the horse and dog tracks being converted into racinos, is influenced by the proposed Tohono O'odham Nation casino resort development; and

**WHEREAS,** The voter survey is estimated to cost approximately $20,000.00; the cost to be borne equally amongst the Apache Rural Coalition Tribes who choose to participate in the study; and

**WHEREAS,** The Council finds that it is in the best interest of the White Mountain Apache Tribe to adopt unequivocal opposition to the development of any and all off-reservation and non-Indian gaming in the State of Arizona and equally opposes the proposed Tohono O'odham Nation casino project for the reasons stated herein.

**NOW THEREFORE BE IT RESOLVED,** that the Tribal Council of the White Mountain Apache Tribe adopts unequivocally, the opposition to off-reservation and non-Indian gaming in the State of Arizona, presently proposed in the form of slot machines within horse and dog track race venues throughout the State.

**BE IT FURTHER RESOLVED,** that the Tribal Council of the White Mountain Apache Tribe opposes the proposed Tohono O'odham Nation casino project in that it violates the spirit of Proposition 202 thereby fueling support for off-reservation and non-Indian gaming.

**BE IT FURTHER RESOLVED,** that the Tribal Council of the White Mountain Apache Tribe approves participation of the Tribe in a voter survey targeted to measure whether the public opinion of Maricopa County regarding off-reservation, non-Indian gaming is influenced by the proposed Tohono O'odham Nation casino resort development, and furthermore, approves to share an equal prorated amount of the total cost, estimated at $20,000.00, amongst the Apache Rural Coalition Tribes, to be paid by the Hon-Dah Casino.

**BE IT FINALLY RESOLVED,** that the Tribal Council of the White Mountain Apache Tribe approves and adopts the Joint Apache Rural Coalition letter, in the form attached as *Exhibit A*, and authorizes the Chairman to execute and deliver the attached letter, in its final form, to the editorial section of the Arizona Republic newspaper.

The foregoing resolution was on March 9, 2009, duly adopted by a vote of for TEN and ZERO against by the Tribal Council of the White Mountain Apache Tribe, pursuant to the authority vested in it by Article IV, Section 1 (a), (b), (i), (k), (t) and (u) of the Constitution of the Tribe, ratified by the Tribe September 30, 1993, and approved by the Secretary of the Interior on November 12, 1993, pursuant to Section 16 of the Act of June 18, 1934 (48 Stat. 984).

ACTING Chairman of the Tribal Council

Secretary of the Tribal Council

2

RESOLUTION NO. _____53_____ -09
OF THE GOVERNING BODY OF THE
YAVAPAI-APACHE NATION

A Resolution Opposing Off-Reservation and Non-Indian Gaming and Opposing a
Proposed Casino Resort Development by the Tohono O'odham Nation

WHEREAS: The Yavapai-Apache Nation ("Nation") is a federally recognized Indian
Tribe organized pursuant to the Indian Reorganization Act of 1934, with
Articles of Association (the "Articles") Yavapai-Apache Indian
Community, Arizona, adopted October 24, 1936, and approved by the
Secretary of the Interior on February 12, 1937, as amended June 21, 1947,
and approved August 15, 1947.

WHEREAS: The Yavapai-Apache Tribal Council ("Council") is empowered to
represent the Yavapai-Apache Nation and act on all matters that concern
the health and welfare of the Nation, and to make decisions not
inconsistent with or contrary to the Constitution of the Yavapai-Apache
Nation; and

WHEREAS: The Council is the legislative body of the Nation empowered to enact
laws, ordinances and resolutions incidental to the exercise of legislative
powers as provided by Article V (v) of the Nation's Constitution; and

WHEREAS: The Council is the legislative body empowered to negotiate with other
governments, manage the economic affairs of the Nation and its
enterprises, and appropriate and regulate the use of the Nations funds, all
pursuant to Article V(b), (i) and (k) respectively of its Constitution; and

WHEREAS: Representative Andrew M. Tobin (Arizona District 1) has announced his
intentions to introduce legislation that would allow slot machines to be
operated out of existing horse and dog track racing venues throughout the
State of Arizona, converting the race and dog tracks into "racinos" and
potentially allowing for 1,500 slots per race track; and

WHEREAS: Passage of any law allowing for racinos would directly violate the voter
approved Proposition 202 which provides for Indian-gaming exclusivity in
the State of Arizona, triggering the "poison pill" provision of the State of
Arizona-Tribal gaming compacts, resulting in the elimination of Indian
gaming restrictions on the number and type of games and gaming facilities
a Tribe could operate, and severely reducing the amount of revenue Tribes
pay to the State and local governments for needed programs; and

WHEREAS: In January 2009, the Tohono O'odham Nation announced its plans to
develop a 1.2 million square foot casino and resort project within the

1

geographic boundaries of the City of Glendale, to include 150,000 square feet of gaming space, 1,089 gaming machines, 50 table games, 24 poker tables and a 1,000 seat bingo hall plus convention, hotel and retail space; and

WHEREAS: Development of the Tohono O'odham Nation casino resort, by virtue of its projected size and location within the City of Glendale, violates the spirit of Proposition 202 in that Tribes promised the People of the State of Arizona that Indian Gaming would be limited in size, scope and location and would operate exclusively on Indian reservation land; and

WHEREAS: Announcement of the Tohono O'odham Nation casino project has fueled support for off-reservation and non-Indian gaming horse and dog track racinos; and

WHEREAS: The prospect of racinos operating throughout the State of Arizona, along with the proposed development of the Tohono O'odham Nation casino resort, pose a direct and imminent threat to the economic viability of the Yavapai-Apache Nation's gaming operations as well as that of other Arizona Tribes, in particular the member Tribes of the Apache Rural Coalition, and would also negatively impact the State of Arizona and local communities who currently benefit from revenue sharing generated by Indian gaming; and

WHEREAS: On March 4, 2009, the Tribal Leadership of the Apache Rural Coalition met to discuss the threat of the proposed racinos and Tohono O'odham Nation casino resort project; and

WHEREAS: The Apache Rural Coalition shared mutual alarm over these developments and, as a result, identified several action items in response, including sending a joint Apache Rural Coalition letter to the Arizona Republic editorial section (*draft letter is attached as Exhibit A*) and sponsoring a voter survey within Maricopa County to measure whether the public opinion, either in favor or opposition to the horse and dog tracks being converted into racinos, is influenced by the proposed Tohono O'odham Nation casino resort development; and

WHEREAS: The voter survey is estimated to cost approximately $20,000.00; the cost to be borne equally amongst the Apache Rural Coalition Tribes who choose to participate in the study; and

WHEREAS: The Council finds that it is in the best interest of the Nation to adopt unequivocal opposition to the development of any and all off-reservation and non-Indian gaming in the State of Arizona and equally opposes the proposed Tohono O'odham Nation casino project for the reasons stated herein.

2

**NOW THEREFORE BE IT RESOLVED,** that the Yavapai-Apache Nation Tribal Council, in Council assembled, at which a quorum is present, adopts unequivocally, the opposition to off-reservation and non-Indian gaming in the State of Arizona, presently proposed in the form of slot machines within horse and dog track race venues throughout the State.

**BE IT FURTHER RESOLVED,** that the Yavapai-Apache Nation Tribal Council, in Council assembled, at which a quorum is present, opposes the proposed Tohono O'odham Nation casino project in that it violates the spirit of Proposition 202 thereby fueling support for off-reservation and non-Indian gaming.

**BE IT FURTHER RESOLVED,** that the Yavapai-Apache Nation Tribal Council, in Council assembled, at which a quorum is present, approves participation of the Nation in a voter survey targeted to measure whether the public opinion of Maricopa County regarding off-reservation, non-Indian gaming is influenced by the proposed Tohono O'odham Nation casino resort development, and furthermore, approves to share an equal prorated amount of the total cost, estimated at $20,000.00, amongst the Apache Rural Coalition Tribes.

**BE IT FINALLY RESOLVED,** that the Yavapai-Apache Nation Tribal Council, in Council assembled, at which a quorum is present, approves and adopts the Joint Apache Rural Coalition letter, in the form attached as *Exhibit A*, and authorizes the Chairman to execute and deliver the attached letter, in its final form, to the editorial section of the Arizona Republic newspaper.

## CERTIFICATION

I hereby certify that the foregoing resolution was adopted by an affirmative vote of the Tribal Council, presented for approval on March 5 2009, by a vote of 7 in favor, O opposed and O abstaining, pursuant to the authority contained under the Constitution of the Yavapai-Apache Nation.

Thomas Beauty, Chairman

ATTEST:

Karla Reimer, Council Secretary

Approved as to form:

Linda Samels
Assistant Attorney General

3

# THE ARIZONA REPUBLIC

# More tribes opposing casino plan in W. Valley

3 comments Mar. 15, 2009 12:00 AM

*Editor's note: In January, the Tohono O'odham Nation of southern Arizona announced plans to build a casino-resort on 134 acres near Glendale. The announcement came as a surprise to many, including the leaders of other Arizona tribes with gaming compacts. In February, the Gila River Indian Community raised objections to the proposal. Now, in this* Republic *exclusive, the leaders of four other gaming-compact tribes declare their objections, as well.*

As leaders of four Apache and Yavapai tribes, we participated in the successful 2002 campaign to pass the 17 Tribes Initiative, which provided tribes with the exclusive right to operate casino gaming in exchange for sharing gaming revenue with state and local governments.

Since 2003, Arizona gaming tribes have contributed more than $483 million to education, health care, wildlife conservation, tourism promotion and assistance to local governments. The 17 Tribes Initiative also limited the number, size and location of future casinos. We promised Arizona voters that casino gaming wouldn't encroach into Arizona cities and towns and would stay well away from neighborhoods, churches and schools. We have kept those promises.

Also on the 2002 ballot was a proposition sponsored by the dog- and horse-racing industry to turn their facilities into "racinos" by giving them the right to operate slot machines. Arizona voters emphatically rejected the tracks' ballot measure by more than 4-1. Despite the voters' verdict, the racetracks are back, seeking to exploit Arizona's budget crisis by pushing legislation that would convert Arizona racetracks into full-blown casinos. They are promising to generate huge amounts of revenue for the state.

What they aren't telling voters is that, under the terms of the tribal-state gaming agreements, allowing racetracks to install slot machines would result in significant legal consequences. By law, tribal-revenue sharing with state and local governments will be reduced by over 80 percent if racetracks are converted into racinos. Furthermore, all limitations on the size and number of tribal casinos would be lifted. In short, Arizona would be transformed overnight into Las Vegas. The bitter irony is that, faced with competition from unlimited casinos on Indian lands, racetracks would generate only a small fraction of the payments to the state they are promising.

The state wouldn't benefit, but the wealthy out-of-state racetrack owners will be laughing all the way to the bank.

We are not at all surprised that the racetracks would cynically seek to invalidate the will of the voters, but we are dismayed that the Tohono O'odham Nation has turned its back on the promises we made to voters in 2002 by seeking to convert land it purchased in the West Valley into a huge casino-resort. It is our reluctant conclusion that the Tohono O'odham Nation, which is headquartered southwest of Tucson, was less than forthcoming about its plans with the people of Arizona, with Glendale and with

every other Arizona tribe. The Tohono O'odhams' planned casino would be near existing Glendale neighborhoods and across the street from Raymond S. Kellis High School.

This proposal clearly violates the spirit of the 17 Tribes Initiative passed by Arizona voters in 2002, and undermines the promises we made to the people of Arizona.

Tribes rely on gaming revenue to fund essential services to our tribal members as we continue the hard work of reversing the impacts of more than a century of abject poverty.

Indian gaming has provided tribes with the ability to not only provide essential and critical services to tribal members but has also given tribes the ability to share the wealth of Indian gaming with local cities and towns by supporting local schools, organizations, tourism, economic development and other community priorities.

We, as Arizona tribes, believe we made a commitment to the people of the state and the people of the state made a commitment to us. Both the people of Arizona and tribes have honored our commitments to each other.

Unraveling those commitments is not only bad policy, it would result in economic injury to both the people of Arizona and Arizona tribes. For these reasons, the undersigned four Arizona tribes are compelled to voice their opposition to both proposals.

-**Ronnie Lupe**, *chairman, White Mountain Apache Tribe*

-**Clinton M. Pattea**, *president, Fort McDowell Yavapai Nation*

-**Thomas Beauty**, *chairman, Yavapai-Apache Nation*

-**Ivan Smith**, *chairman, Tonto Apache Tribe*