## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

TOHONO O'ODHAM NATION,

|  |  |
|---|---|
| Plaintiff, | |
| v. | No. 1:10-cv-472-JDB |
| KENNETH L. SALAZAR, in his official capacity as Secretary of the United States Department of the Interior, | |
| Defendant. | |

## REPLY BRIEF IN SUPPORT OF THE GILA RIVER
## INDIAN COMMUNITY'S MOTION TO INTERVENE

AKIN GUMP STRAUSS HAUER & FELD LLP
James P. Tuite (D.C. Bar No. 360649)
Merrill C. Godfrey (D.C. Bar No. 464758)
James T. Meggesto (D.C. Bar No. 459900)
Michael Rossetti (D.C. Bar No. 477122)
1333 New Hampshire Avenue, NW
Washington, D.C. 20036
(202) 887-4000
jtuite@akingump.com

Jennifer K. Giff (AZ Bar No. 018366)
General Counsel
Gila River Indian Community
Post Office Box 97
Sacaton, Arizona 85147
(520) 562-9760
jennifer.giff@gric.nsn.us

*Counsel for Gila River Indian Community*

The Tohono O'odham Nation ("Nation") argues that the Gila River Indian Community ("Community") cannot intervene to protect its interest under IGRA because "[t]his suit has no bearing whatsoever on whether Parcel 2 is eligible for gaming under IGRA."  Br. 1-2.  That confuses the merits with the issue of standing.  It assumes away the very issue on the merits on which the Community seeks to be heard – whether the Secretary can be forced to issue a decision under the Gila Bend Act without arriving at a concurrent decision under IGRA.  The Community seeks to intervene solely to prevent issuance of a writ of mandamus requiring such action.  If granted, that extraordinary remedy would preclude consideration of the relevant IGRA issues by the Department of the Interior ("Department" or "Interior") – the agency statutorily authorized to administer that statute – and would permit the Nation to accomplish its objective of conducting gaming on non-reservation lands by way of a *fait accompli*, without any consideration of that activity's effect on the federally protected rights of other parties.

The Community's view of the merits is that the Secretary has authority to prevent such a maneuver by considering the IGRA issues concurrently with a lands-into-trust decision.  Putting the merits of that argument to one side, surely the Community is a proper party to *present* that argument; even the Nation does not seriously contest that the Community has a protectable interest under IGRA.  Moreover, the Community has been a participant in the administrative proceedings at Interior, where the relationship between IGRA and the Gila Bend Act has been raised as an issue for adjudication.  The writ sought by the Nation would cut short those proceedings and impose a view of the law that would nullify the Community's arguments there. The Community has an interest in ensuring that the arguments it has made be considered and ruled on, in the first instance, by the agency entrusted with administering these statutes.

**ARGUMENT**

I.      **THE COMMUNITY IS ENTITLED TO INTERVENTION OF RIGHT**

A.      **The Community Has Standing to Protect Its Interests Under IGRA**

The Nation's effort to challenge the Community's standing on the ground that IGRA "has nothing to do with this case" (Br. 2) fails as a matter of law.  No principle of standing gives the Nation the authority to dictate unilaterally the statutes that are implicated by the administrative action that it asks this Court to compel.  Quite the opposite, it is well settled that, in considering a would-be intervenor's prudential standing, "a court is 'not limited to considering the statute under which [the plaintiff] sued.'"  *Akiachak Native Cmty. v. U.S. Dep't of Interior*, 584 F. Supp. 2d 1, 8 (D.D.C. 2008) (quoting *Clarke v. Sec. Indus. Ass'n,* 479 U.S. 388, 401 (1987)).  Thus, the Nation's contention that the Community is "outside the zone of interests protected by the Lands Replacement Act" (Br. 6) is irrelevant.  What is relevant is that granting the extraordinary remedy of mandamus would directly and irrevocably impair the Community's legally protected interest in participating in ongoing proceedings before the Department that implicate its rights under IGRA.  25 C.F.R. § 292.13.  That interest is more than adequate to establish the Community's standing to intervene, and is unaffected by the Nation's deliberate omission of IGRA from its complaint.  *Citizens Exposing Truth About Casinos v. Kempthorne* (*CETAC*), 492 F.3d 460, 465 (D.C. Cir. 2007).  Indeed, whether the agency could make a decision under the Gila Bend Act heedless of IGRA – let alone be *compelled* to make such a decision – is precisely the question on which the Community seeks to intervene.

That the Nation falls within the zone of interests protected by IGRA cannot plausibly be disputed.  "The requirement that the interests of individual [parties] fall within the zone of interests protected or regulated by the statutes at issue is 'not meant to be especially demanding.'"  *TOMAC v. Norton*, 193 F. Supp. 2d 182, 188 (D.D.C. 2002) (quoting *Clarke*, 479

U.S. at 399-400), *aff'd*, 433 F.3d 852 (D.C. Cir. 2006).  "The focus is 'not on those who

Congress intended to benefit, but on those who in practice can be expected to police the interests

that the statute protects.'"  *Id*. (quoting *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1075

(D.C.Cir.1998)).  IGRA's "community protection" provision expressly contemplates the

participation of "officials of other nearby Indian tribes" in determining whether a gaming license

should issue.  25 U.S.C. § 2719(b)(1)(A).  And, as the D.C. Circuit has recognized, the

"[i]nclusion of this provision demonstrates that Congress could not have intended to preclude

efforts to enforce it."  *CETAC*,  492 F.3d at 464-65.  Thus, far from being excluded from the zone

of interests protected by IGRA, under controlling D.C. Circuit precedent, the Community is

"precisely the type of [party] who could be expected to police these interests."  *TOMAC*, 193 F.

Supp. 2d at 190.[1]  That conclusion is all the more apparent given that the Community has already

participated extensively in proceedings before the Department in this matter.[2]

     The Nation's efforts to distinguish *CETAC* (Br. 3-4) are unavailing.  The Nation argues

that *CETAC* does not control because, unlike that case, the present action "will not determine

whether Parcel 2 is eligible for gaming."  Br. 4.  But in the next breath it says that, once the land

is taken into trust under the Gila Bend Act, the Nation need not "obtain an Indian lands

---

[1] The Nation's argument concerning the Community's receipt of damages in compensation for the United States' taking of its aboriginal territory (Br. 7-8 n.3) is a non-sequitur.  The Community is not claiming an ownership interest in the land at issue.  It merely notes that the prospect of large-scale casino gambling being conducted on lands having substantial historic and cultural significance to the Community provides further explanation for its participation in this proceeding.

[2] *See, e.g.*, March 27, 2009 – Memorandum re: "within the Corporate Limits" (AR 4815-4830); March 27, 2009 – Memorandum re: settlement of a land claim (AR 4779-4841); January 29, 2010 – Memorandum re: settlement of a land claim (AR 1503-1588); January 29, 2010 – Revised memorandum re: "within the Corporate Limits"  (AR 1542-1575); February 19, 2010 – Power Point Presentation (AR 4901-4920); March 10, 2010 – Supplemental Memorandum (AR 4103-4393).

determination in advance of" conducting gaming on the property.  Br. 5.  The Nation cannot have

it both ways.  Because the Nation is plainly seeking to treat the taking of Parcel 2 into trust as a

determination that the land qualifies for gaming under IGRA's "settlement of a land claim"

exception, 25 U.S.C. § 2719(b)(1)(B)(i), the Community's interests are indistinguishable from

those of the intervenors in *CETAC*.  The Nation's transparent attempts to "withdraw" its request

for a gaming eligibility determination while maintaining a public relations campaign that touts

the economic benefits of its proposed casino, *see* West Valley Opportunity: A Partnership for the

Future, http://www.westvalleyopportunity.com/projectfacility-details (last visited May 21, 2010),

cannot change the fundamental nature of the Nation's gaming trust application and the resultant

need to follow Interior's regulations.

Moreover, the Nation misreads *CETAC*, ignoring that the court found "prudential

standing to challenge the Secretary's *decision to take the Sackrider property into trust* as the

Band's 'initial reservation.'"  492 F.3d at 464 (emphasis added).  The Court found standing to

challenge the acquisition itself, noting that the argument to be presented on the merits "might

*prevent a landless tribe* from gaining the benefits of IGRA."  *Id.* at 465 (emphasis added).  Thus,

just like this case, *CETAC* involved a challenge to a land-into-trust decision, and the ground for

standing was – as here – an interest under IGRA.

The Nation admits that, if "the Secretary's interpretation of IGRA's 'settlement of a land

claim' exception were at issue in this case, then GRIC might have standing to participate."  Br.

3-4.  The Nation then tries to distinguish *CETAC* on the ground that Interior had issued a

preliminary decision under an IGRA exception in that case.  But it is no less injurious to the

Community's legal interests under IGRA for this Court to order Interior to *disregard* IGRA

entirely, than it would be for Interior to issue an adverse decision under IGRA in conjunction

with a decision under the Gila Bend Act.  In fact, in *CETAC* the Court also noted that, under normal administrative process, "the Secretary is to determine whether a tribe meets one of IGRA's exceptions *when the Secretary decides to take land into trust for gaming*."  492 F.3d at 462-63 (emphasis added).  By seeking to circumvent that process, the Nation is doing nothing more than taking a back-door route to defeating the Community's IGRA interests.

Nor do the cases relied upon by the Nation advance its position.  In *Stop the Casino 101 Coalition v. Salazar*, No. 08-02846, 2009 WL 1066299 (N.D. Cal. Apr. 21, 2009), the court held that defendants lacked standing to challenge a tribe's plan to build a casino on lands that had *already been taken into trust*.  Moreover, the land at issue was taken into trust with an express caveat that a gaming facility was not authorized until the tribe met the requirements of IGRA.  In fact, at the time of the suit, the tribe was going through the IGRA process.  *Id*. at *3-*4.  Here, by contrast, the Nation is seeking to circumvent that process altogether, notwithstanding its clearly stated intention to conduct gaming on the property.  If the Community cannot participate to protect its interests now, there may be no later opportunity to do so.

Likewise, *Upstate Citizens for Equality, Inc. v. Salazar*, No. 08-cv-0633, 2010 WL 827090 (N.D.N.Y. Mar. 4, 2010), is wholly inapposite.  That case involved a challenge to the Secretary's decision to take land into trust for the Oneida Indian Nation on numerous grounds, including that the Department did not fully comply with the requirements of IGRA.  As in *Stop the Casino*, the land at issue had already been taken into trust.  Moreover, the court dismissed the plaintiffs' IGRA claims on the ground that the parcel in question was within the boundaries of the tribe's reservation and therefore did not even implicate any of the Section 20 exceptions.  *Id.* at *6-*7.  The case thus provides no support for the Nation's position, which seeks to compel the

trust decision and, at the same time, the authorization of gaming without any inquiry into whether the IGRA requirements have been satisfied.

>    **B.**     **Granting a Writ of Mandamus Would Impair the Community's Ability to Protect Its Interests**

The Nation offers little in response to the Community's argument that its procedural interests under IGRA would be severely impaired by a grant of mandamus.  In fact, the Nation acknowledges (Br. 6) that, if its position were adopted, the Community's remedies would be limited to enforcement by the National Indian Gaming Commission, and only *after* the Nation's gaming activities would have already begun.  The hope of such *post hoc* discretionary enforcement action by a third-party government agency would be far too little and too late to effectuate the procedural rights expressly provided to the Community under IGRA and its implementing regulations.  Indeed, once the Glendale Parcel is taken into trust under the Gila Bend Act, the Community may be foreclosed by the Quiet Title Act from bringing any future challenge to the acquisition, including asserting a claim that the acquisition is unlawful because no proper IGRA determination was made.  *See Upstate Citizens for Equality, Inc.*, 2010 WL 827090, at *7.

None of the Nation's other efforts to minimize the impact of the exceptional mandamus relief it seeks can paper over the effect a compelled agency decision would have on the Community's interests.  First, the Nation seeks to characterize the Secretary's responsibility under the Gila Bend Act as a purely ministerial act, and argues that any consideration of the action's effect on other statutory rights amounts to "add[ing] to the finite list of requirements set forth by Congress."  Br. 4.  But that position would judicially compel the Secretary to ignore the many other interrelated factors that Congress believed were essential to a proper evaluation of a request to conduct gaming on non-reservation land.  As the United States rightly recognizes,

those considerations must inform any construction of the Gila Bend Act, particularly given that IGRA was enacted *after* that statute.  *See* U.S. Br. 11 ("[A]ny Departmental decision has impacts beyond just Plaintiff.  Plaintiff seeks to open a casino in suburban Phoenix.  And, while the Department may ultimately conclude that federal law allows that pursuit, the question should not be judged in a vacuum.").  Thus, far from adding requirements to the Gila Bend Act, allowing the Secretary to complete his assessment of the Nation's application in light of its effect on other federally protected rights simply respects the principle that statutes should be construed whenever possible to apply harmoniously.  *See, e.g.*, *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 879 (1994) (noting "the familiar principle of statutory construction that, when possible, courts should construe statutes . . . to foster harmony with other statutory and constitutional law").  That rule applies with particular force in the context of federal Indian law. *See, e.g.*, *Stevens v. Comm'r of Internal Revenue*, 452 F.2d 741, 744 (9th Cir. 1971) ("Federal policy toward particular Indian tribes is often manifested through a combination of general law, special acts, treaties and executive orders.  All must be construed *in pari materia* . . . .") (citing *Kirkwood v. Arenas,* 243 F.2d 863, 867 (9th Cir. 1957)).

Second, the Nation ignores the practical consequences of the disjointed approach to statutory interpretation and enforcement that it seeks to compel through mandamus.  If the Nation's view were adopted, the Secretary would be required to issue a decision under one statute (the Gila Bend Act) that may later be found to undermine the purposes and objectives of another statute (IGRA) that the Department also has a responsibility to administer.  As a practical matter, it would be virtually impossible for the Department to unscramble the effect of that decision after the fact, particularly where, as here, the applicant intends to commence gaming upon the taking of the property into trust.  And the Nation would foreclose any meaningful

avenue for the expert agency to hear and respond to the effect of its decision on the interests of other affected parties.

Third, equally unavailing to the Nation is the statement in IGRA that "[n]othing in this section shall affect or diminish the authority and responsibility of the Secretary to take land into trust." 25 U.S.C. § 2719(c). That provision does not answer the question posed by the Nation's mandamus petition – namely, whether the Gila Bend Act forbids the Secretary from considering IGRA and the Gila Bend Act concurrently as part of his trust decision. Furthermore, that IGRA preserves the Secretary's power to place land into trust does not lead automatically to the conclusion that such action constitutes the "settlement of a land claim." 25 U.S.C. § 2719(b)(1)(B)(i). *See* U.S. Br. 12-13 ("Plaintiff has stated its intent to open a casino on the property, but has withdrawn its request for a determination that the land is eligible for gaming under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–21 . . . . Plaintiff cannot game on the property until and if the Department has made that determination."). At the very least, the question is not so settled as to justify the "drastic" remedy of mandamus, *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980), particularly without allowing for participation by the Community. *See Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002) ("Mandamus is available only if: '(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff.'").[3]

---

[3] The Nation argues (Br. 5 n.2) that, despite its mandatory language, the Department's recently promulgated regulation implementing IGRA does not require tribes to seek an opinion from Interior before the land is taken into trust. 25 C.F.R. § 292.3(b) ("the tribe *must* submit a request for an opinion to the Office of Indian Gaming") (emphasis added). That issue, however, is currently being contested before the Department. The agency should have the opportunity to resolve that question in the first instance, and its adjudication there should not be prematurely terminated through the extraordinary mechanism of mandamus, especially given the substantial deference owed to an agency's interpretation of its own regulations. *See Kornman v. SEC*, 592

## II.   PERMISSIVE INTERVENTION IS ALSO WARRANTED

The Nation also offers no sound answer to the Community's argument that permissive intervention is warranted under Federal Rule of Civil Procedure 24(b)(1)(B).

First, intervention by the Community will not unduly delay this proceeding.  Indeed, any delay is largely a problem of the Nation's own making.  The Nation purchased the Glendale parcels in 2003 but delayed filing its trust application for approximately six years.  The Nation provides no explanation for why it waited so long to submit its application, yet suddenly requires emergency relief from this Court.  Moreover, the Nation has long been aware of the Community's participation in this case before both the Department and this Court.  In fact, the Nation itself contended in its opposition to the Community's Motion to File an *Amicus Curiae* Brief supporting the United States' Motion to Transfer Venue that the Community's arguments would be more appropriately presented through intervention.  *See* Nation Opposition to Community Motion to File *Amicus Curiae* Brief at 4 (Doc. 20).  Further, the Community submitted its proposed opposition to summary judgment simultaneously with its intervention motion, thereby avoiding any delay of this proceeding.

Second, the Nation's rights will not be prejudiced by the Community's intervention.  The Community seeks to be heard only on whether the writ of mandamus should issue.  In asserting that the Community's intervention will somehow "confuse and complicate" the issues before the

---

F.3d 173, 181 (D.C. Cir. 2010) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).  Furthermore, regardless of whether Section 292.3(b) requires a tribe to *seek an opinion* before commencing gaming, the United States recognizes that an IGRA determination by the agency is a prerequisite to any such activity.  *See* U.S. Br. 13 ("Plaintiff cannot game on the property until and if the Department has made that determination.").  *Cf. CETAC*, 492 F.3d at 462-63 ("[B]y Memorandum of Agreement, the Secretary and the National Indian Gaming Commission, which administers IGRA, 25 U.S.C. § 2706(b)(10), agreed that the Secretary is to determine whether a tribe meets one of  IGRA's exceptions when the Secretary decides to take land into trust for gaming.").

Court (Br. 2; *see also* Br. 9), the Nation itself is confusing things.  The Nation's speculation that "GRIC intends to . . . argu[e] that Parcel 2 does not fall within the 'settlement of a land claim' exception" (Br. 9) is simply wrong.  Quite the opposite, the purpose of the Community's intervention is to *dissuade* the Court from reaching the merits of any such issues not yet passed on by Interior.  The Community seeks intervention only to advocate that Interior be allowed to exercise its congressionally conferred expertise and consider IGRA and the Gila Bend Act concurrently, without mandamus disrupting the process.  The Community's participation will counter the Nation's attempt to artificially cramp the agency's decisionmaking here, and will contribute to the Court's consideration of the multifaceted implications of the issues before it.

## CONCLUSION

For the foregoing reasons, and those set forth in the Community's opening brief, the Court should grant the Community's motion to intervene.

Respectfully submitted,

*/s/ James P. Tuite*
James P. Tuite (D.C. Bar No. 360649)
Merrill C. Godfrey, (D.C. Bar No. 464758)
James T. Meggesto, (D.C. Bar No. 459900)
Michael Rossetti (D.C. Bar No. 477122)
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, NW
Washington, D.C. 20036
(202) 887-4000
jtuite@akingump.com

Jennifer K. Giff (AZ Bar No. 018366)
General Counsel
Gila River Indian Community
Post Office Box 97
Sacaton, Arizona 85147
(520) 562-9760
jennifer.giff@gric.nsn.us