IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|                                                        |     |                          |
|--------------------------------------------------------|-----|--------------------------|
| TOHONO O'ODHAM NATION,                                 | )   |                          |
|                                                        | )   |                          |
| Plaintiff,                                             | )   |                          |
|                                                        | )   | Case No. 10-cv-00472-JDB |
|                                                        | )   |                          |
| v.                                                     | )   |                          |
|                                                        | )   |                          |
| KENNETH L. SALAZAR, in his official                    | )   |                          |
| capacity as Secretary of the Interior,                 | )   |                          |
|                                                        | )   |                          |
| Defendant,                                             | )   |                          |
|                                                        | )   |                          |
| –and–                                                  | )   |                          |
|                                                        | )   |                          |
| THE CITY OF GLENDALE,                                  | )   |                          |
|                                                        | )   |                          |
| Defendant-Intervenor.                                  | )   |                          |
|                                                        | )   |                          |

_____)

**DEFENDANT'S REPLY IN SUPPORT OF
CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff seeks to transfer decision-making under the Lands Replacement Act from the Secretary of the Interior to this Court on the basis of alleged delay in agency action. Plaintiff's requested relief, however, ignores the minimal time for which the most-recently requested action has been before the Department. Regardless, even if the Secretary had unreasonably delayed action on Plaintiff's application, the Administrative Procedure Act, at most, only allows the Court to remand the issue and direct the Secretary to make a decision. Plaintiff's claim for a writ of mandamus to actually take Parcel 2 into trust has no valid basis because the Lands Replacement Act contains no clear and undisputed duty to act. Plaintiff's request to compel agency action should therefore be denied.

I.      **The Department Has Not Unreasonably Delayed Action on Plaintiff's Request to Take Parcel 2 into Trust.**

Plaintiff's response brief makes clear that Plaintiff did not suggest until at least August 2009 that only Parcel 2 could be taken into trust. *See* Pl.'s Resp. Mem. at 5 (Doc. No. 44) . As Plaintiff states: "On January 28, 2009, the Nation filed an application asking the Secretary to accept trust title to the entire 135-acre [property]." Pl.'s Resp. Mem. at 5 (citing AR2053–2620). Then, on August 18, 2009, after the City of Glendale claimed it had annexed portions of the property, "the Nation requested that the Department immediately accept title to Parcel 2." Pl.'s Resp. Mem. at 5 (citing AR1668). Therefore, at the earliest, August 18, 2009, is the date on which Plaintiff asked that Parcel 2 be taken into trust in isolation from the remaining parcels. Plaintiff's attempt to transport its Parcel 2 request to January 2009 should be rejected. *See* Pl.'s Resp. Mem. at 4. The cases Plaintiff cites in support of that attempt present entirely different facts than those here, as neither involved a change in the action requested. *See In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 417 (D.C. Cir. 2004) (requesting initial of formal consultation under the Endangered Species Act); *In re Monroe Commc'ns Corp.*, 840 F.2d 942, 943, 947 (D.C. Cir. 1988) (requesting right to operate on certain television broadcast frequency). Under Plaintiff's theory, it could well change its request again today, only to file suit tomorrow alleging unreasonable delay in considering that request. But the Department cannot have "unreasonably delayed" taking an action that Plaintiff has not yet requested the Department to take.

The record further clarifies that it was not until March 12, 2010, that Plaintiff requested with any certainty the action it asks this Court to compel. A comparison of the specific language Plaintiff used in making its many requests underscores the point:

▸ <u>January 28, 2009</u>: "With this letter and the accompanying materials, the Tohono O'odham Nation requests that the United States take ± 134.88 acres of land into trust in Maricopa County for the benefit of the Tohono O'odham Nation . . . ." AR2054.

▸ <u>August 18, 2009</u>: "[T]he Nation requests that the Department immediately issue a notice of intent to take the westernmost tract in trust for the Nation . . . ." AR1668. "It well may be that the City's allegations will be resolved to the Department's satisfaction before trust title for Parcel No. 2 is actually acquired by the United States. Should that be the case, the Nation will wish to work with the Department to reconnect all of the tracts that make up the Settlement Property parcel so that the entirety of the property can be included in the final trust acquisition." AR1668–69.

▸ <u>September 8, 2009</u>: "I ask that the Department complete the mandatory fee-to-trust application process for the entire acreage identified in the Nation's fee-to-trust request . . . ." AR1638.

▸ <u>January 28, 2010</u>: "I urge the Department to act, in accordance with federal law, on the Nation's fee-to-trust request within one month of your receipt of this letter." AR1592 (emphasis removed).

▸ <u>March 12, 2010</u>: "[T]o ensure that the Department will act on at least a portion of its application without further delay, the Nation hereby once again requests that the Department immediately agree to accept trust title to Parcel 2, which is unaffected by the state-court litigation." AR1446 (emphasis removed). "The Nation requests that the Secretary hold the remainder of the application in abeyance pending resolution of the state-court litigation." AR1447.

Plaintiff's latest request actually works to complicate, rather than simplify, the Department's potential acquisition of solely Parcel 2. Plaintiff's desire to "hold the remainder of the application in abeyance" only creates additional procedural questions. Plaintiff effectively asks the Department to back-date, at some later time, the potential future acquisition of the remaining parcels to create "a single, contiguous area." AR1447. Not only does this raise questions as to Departmental authority, the status of the application with respect to the remaining parcels, and public notice requirements, but also potentially affects the number of acquisitions

Plaintiff has made for purposes of the Lands Replacement Act's numerical limit on acquisitions. *See* Pub. L. No. 99-503 § 6(d).  Some have questioned the validity of the Department's previous decision to increase that limit.  *See* Glendale's Resp. Mem. at 15–16 (Doc. No. 41).

Similarly, Plaintiff's request for, and subsequent withdrawal of, an Indian lands opinion demonstrates the application's ever-changing nature.   Plaintiff does not deny that it withdrew its request for an Indian lands opinion on July 17, 2009.[1]  *See* AR1694–95.   Nor does Plaintiff specify the other economic development opportunities it envisions for the property.   Thus, the withdrawal actually raises additional concerns because Plaintiff now suggests that it could begin gaming without a definitive statement from the Department as to whether such gaming would be lawful under the Indian Gaming Regulatory Act (IGRA).  *See* Pl.'s Resp. Mem. at 15.

The Department's on-going review of the application has been reasonable given the changing requests and on-going litigation; the importance of the issues involved; the permanence of any action to accept land into trust; and the fact that the Lands Replacement Act does not set forth a specific timeline for reaching a decision on Plaintiff's application.  *See Mashpee*

---

[1]  Indian lands opinions are advisory opinions that determine whether a Tribe may game on certain lands and are issued, depending on the circumstances, by either the National Indian Gaming Commission (NIGC) or the Department of the Interior.  Under the Indian Gaming Regulatory Act (IGRA), Tribes may only game on "Indian lands," defined as land within the limits of the Tribe's reservation either held in trust by the United States for the benefit of the Tribe or its members, or subject to restrictions against alienation by the United States for the benefit of the Tribe or its members.  *See* 25 U.S.C. § 2703.  In addition, IGRA contains a general prohibition against gaming on lands acquired into trust after October 17, 1988, unless the land meets one of several exceptions.  *See* 25 U.S.C. § 2719.  The facts and circumstances of a given land acquisition govern whether or not a formal Indian lands opinion is generated.  In the present matter, however, either the Department of the Interior's Office of the Solicitor or the NIGC's Office of General Counsel will likely find it necessary to formally examine whether Plaintiff's land is eligible for gaming.  Indeed, Plaintiff's initial January 28, 2009, request indicates the practical importance of acquiring an opinion prior to commencing gaming.  *See* AR2043–44.

*Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003); *Cutler v.*

*Hayes*, 818 F.2d 879, 898–99 (D.C. Cir. 1987).  Certainly, the Department continues to review

Plaintiff's application.  But that "application" and the facts surrounding it have changed.  The

Department does not dispute that Plaintiff has been entirely clear that it would eventually like the

entire 134-acres to be held in trust.  But that question is distinct from the specific action Plaintiff

alleges the Department to have unreasonably delayed.  Plaintiff's request regarding Parcel 2 was

not set in stone with any certainty until the Arizona state court reached a decision on Plaintiff's

annexation suit—a factor beyond the Department's control—and Plaintiff sent its March 12,

2010, letter.  Plaintiff is entirely correct to reference the importance of "delicate" issues in

assessing unreasonable delay claims.  *See* Pl.'s Resp. Mem. at 11 (quoting *In re Monroe*, 840

F.2d at 946).  Congress sought to protect local interests via the Lands Replacement Act's

"corporate limits" bar.  *See* H.R. Rep. No. 99-851, at 11 (Sept. 19, 1986).  That issue is

particularly "delicate" given the permanence of land-into-trust acquisitions.  Absent a statutory

timeline, the Department's timetable for addressing that issue is entitled to deference.  *See*

*Cobell v. Norton*, 240 F.3d 1081, 1096 (D.C. Cir. 2001).

While the issue before the Department may not be as scientifically, economically, or

historically complex as other unreasonable delay cases, Plaintiff's alleged delay also is not of the

many years often alleged.  Plaintiff's citations in support of its contention that simplicity should

govern agency decision-making not only ignore the delicacy of the "corporate limits" issue, but

also did not involve suits to compel action.  *See Nat'l Fed'n of Fed. Employees, Local 1669 v.*

*Fed. Labor Relations Auth.*, 745 F.2d 705 (D.C. Cir. 1984) (reviewing agency decision); *Nat'l*

*Fed'n of Fed. Employees, Local 1167 v. Fed. Labor Relations Auth.*, 681 F.2d 886 (D.C. Cir.

- 5 -

1982) (reviewing agency decision).

Plaintiff's demand for action with respect to Parcel 2 continues to prioritize Plaintiff's interests above all else, and ignores the practical impacts of its requested relief.  Plaintiff does not dispute that the Department is faced with many other land-into-trust applications, instead arguing that its application "should be given a higher priority."  *See* Pl.'s Resp. Mem. at 18. Congress may have given Plaintiff a unique statutory scheme for trust acquisitions, but Congress did not grant it priority over other Tribes seeking similar economic development opportunities. In effect, Plaintiff seeks to establish a prioritization process for the Department based upon a given application's perceived simplicity.  But the Department is best equipped to order its own priorities.  *See In re Barr Labs., Inc.*, 903 F.2d 72, 76 (D.C. Cir. 1991).  How an agency sets its priorities is "not a proper subject of inquiry by the courts."  *Med. Comm. for Human Rights v. SEC*, 432 F.2d 659, 674 (D.C. Cir. 1970), *vacated on other grounds*, *SEC v. Med. Comm. for Human Rights*, 404 U.S. 403 (1972).

Similarly, Plaintiff's reference to the general trust relationship that exists between the Department and federally-recognized Indian Tribes should not impact the Court's unreasonable delay analysis.  Plaintiff's Complaint alleges that the Department has violated a fiduciary obligation to take Parcel 2 into trust.  *See* Compl. ¶¶ 41–46.  As Defendant has noted, to the extent Plaintiff is arguing breach of some binding fiduciary duty, it cannot state a claim.[7]  *See*

---

[7] Any attempt by Plaintiff to argue the general trust relationship creates a binding obligation to take Parcel 2 into trust would be contrary to long-standing case law.  Specific fiduciary duties derive not from the general trust relationship, but from the statutes and regulations that create the specific duties within that relationship.  *See United States v. Navajo Nation*, 537 U.S. 488, 504–05 (2003).  Here, given the absence of a trust corpus, nothing in the Lands Replacement Act could create such a specific duty.  *See Pueblo of Santa Ana v. Kelly*, 932 F. Supp. 1284, 1297–98 (D.N.M. 1996), *aff'd* 104 F.3d 1546 (10th Cir. 1997).

Def.'s Mem. Supp. Summ. J. at 12 n.5 (Doc. No. 39).  Plaintiff's briefing ventures from that

claim to instead argue that the trust relationship further demonstrates unreasonable delay.  *See*

Pl.'s Resp. Mem. at 42–43.  But Plaintiff provides no support for its conclusion that the general

trust relationship is an additional factor that warrants consideration, particularly given that the

same general trust relationship exists with respect to the other Tribes that presently have pending

land-into-trust applications before the Department.

## II.     There Is No Clear and Undisputed Duty to Take Parcel 2 into Trust.

Despite arguing the Department has unreasonably delayed making a determination with

respect to Parcel 2, Plaintiff still seeks more than just a decision on its application.  Plaintiff

requests a redelegation of decision-making under the Lands Replacement Act from the Secretary

to this Court.  *See* Pl.'s Resp. Mem. at 21–41.  Plaintiff's, the City of Glendale's, and the Gila

River Indian Community's (to the extent the Court grants it intervention) extensive briefing on

Parcel 2's eligibility under the Act only reinforces that the decision should be made in the first

instance by the Department.

### A.     The Lands Replacement Act Does Not Include a Duty to Take Land into Trust Simply at Plaintiff's Request.

Plaintiff agrees, whether viewed under the Mandamus Act or Section 706(1) of the APA,

that a clear duty to take the action in question is a prerequisite to any judicial relief compelling

that action.  *See* Pl.'s Resp. Mem. at 22 (stating action is compellable under "§ 706(1) and

mandamus if it imposes a clear duty to act").  The Mandamus Act requires that the action in

question be "clear and undisputable."  *13th Reg'l Corp. v. U.S. Dep't of the Interior*, 654 F.2d

758, 760 (D.C. Cir. 1980).  Similarly, the only agency action a court can compel under Section

706(1) is "action legally *required*."  *Norton v. S. Utah Wilderness Alliance ("SUWA")*, 542 U.S.

55, 63 (2004) (emphasis in original).  Absent a clear duty to take the action in question, a court

lacks jurisdiction under the Mandamus Act, *see In re Cheney*, 406 F.3d 723, 729 (D.C. Cir.

2005), and, under the APA, can only compel an agency "to take action upon a matter, without

directing *how* it shall act."  *SUWA*, 542 U.S. at 64 (emphasis in original) (citation omitted).

Plaintiff's request for this Court to order the Department to take Parcel 2 into trust is a request

for an action that remains unclear and disputed, and, therefore, is not required nor compellable.

      Plaintiff concedes that an eligibility determination must be made before land can be taken

into trust under the Act.  *See* Pl.'s Mem. Supp. Summ. J. at 26 (Doc. No. 4-1); AR3337–39.  The

Lands Replacement Act is thus distinct from other acquisition statutes that require <u>any</u> purchased

land to be taken into trust.  *Compare* Pub. L. No. 99-503, § 6(d) *with* Pub. L. No. 98-602, §

105(b)(1) ("A sum of $100,000 of such funds shall be used for the purchase of real property

which shall be held in trust by the Secretary for the benefit of such Tribe.").  Plaintiff also

concedes that Department decision-makers have yet to make the necessary eligibility

determination, Pl.'s Resp. Mem. at 13, and that some level of analysis is necessary before

reaching that conclusion.  *See* Pl.'s Resp. Mem. at 11.  The Department is not advocating for any

particular definition of the term "corporate limits" or conclusion on the eligibility determination

generally.   Certainly, the City of Glendale and Plaintiff are at direct odds on the issue.   The

point is simply that the Department has yet to make a final determination applying the term and

the Act to Parcel 2.  Absent finality on eligibility, the Department has no clear and undisputable

duty to take Parcel 2 into trust.

      Plaintiff's opinion as to the simplicity in defining "corporate limits" does not change the

fact that primary jurisdiction rests with the Department.  *See Action for Children's Television v.*

*FCC*, 59 F.3d 1249, 1257 (D.C. Cir. 1995).  Plaintiff claims the doctrine of primary jurisdiction

is irrelevant because the Department "has departed from the usual course of administrative

proceedings through [ ] unreasonable delay."  Pl.'s Resp. Mem. at 27.   But it is unclear where

the procedural departure occurred.  The procedure for land-into-trust applications for gaming is

generally governed by a three-step process: application, review and recommendation by the

regional office, and final decision-making at Interior headquarters.  This is precisely the process

the Department has followed.  Even if the Department has unreasonably delayed reaching a

decision on Plaintiff's application—which it has not—the remedy is not to grant Plaintiff <u>the</u>

decision it seeks in its application.  The remedy is to ensure Plaintiff receives <u>a</u> decision.

  Each of the cases Plaintiff cites for the proposition that this Court can and should

interpret "corporate limits" is distinguishable.  While each involves statutory interpretation on

some level, none involve a court making a determination in place of the federal agency Congress

initially tasked with the responsibility.  Plaintiff, for example, cites to *Sierra Club v. Thomas*,

828 F.2d 783, 793 (D.C. Cir. 1987).  *See* Pl.'s Resp. Mem. at 22–23.  The very case to which

*Sierra Club* cites, however, undercuts Plaintiff's interpretation.  *See* 828 F.2d at 793 n.70 (citing

*Envtl. Def. Fund, Inc v. Ruckelshaus*, 439 F.2d 584, 593–95 (D.C. Cir. 1971)).  The issue in

*Environmental Defense Fund* was whether the Secretary of Agriculture was required to issue

notices cancelling the pesticide registration for DDT.  *See* 439 F.2d at 593.  The court found that

the statute in question required the Secretary to issue notices and initiate administrative

proceedings where there had been a substantial question about the pesticide's safety.  *Id.* at 594.

Because the Secretary had already determined there to be a substantial question about DDT's

safety, the court ordered the Secretary to issue the notices and initiate the proceedings.  *See id.* at

595.  The court did not—as Plaintiff asks the Court to do here—consider the facts and make its own safety determination.  *See also In re Cheney*, 406 F.3d at 729 (interpreting the Federal Advisory Committee Act to determine whether certain documents were subject to the Freedom of Information Act); *13th Reg'l Corp.*, 654 F.2d at 761–63 (interpreting statutory term after agency had completed study in question, and leaving agency to determine which programs benefitted Native Alaskans).[3]  The Department does not argue that its eventual eligibility determination with respect to Parcel 2 is unreviewable or subject to unlimited deference; only that the Secretary holds the authority to make that determination in the first instance.

### B.    The Extraordinary Remedy of Mandamus Should Not be Invoked Given the Equitable Considerations of Plaintiff's Requested Relief.

Equitable and practical implications should also influence this Court's consideration of mandamus relief.  Plaintiff too quickly dismisses that point.  *See* Pl.'s Resp. Mem. at 38–41.  Grounds for mandamus must "be clear and compelling on both legal and equitable grounds for a writ to issue."  *13th Regional Corp.* 654 F.2d at 760.   Plaintiff's claims of unreasonable delay do not remove equity from the question—the *TRAC* factors are only a guide.  *See Telecomm. Research Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984).  Equity is particularly important here given the permanency of the requested relief.  A judicial order requiring Parcel 2

---

[3] Plaintiff's reference to *Haneke v. Secretary of Health, Education & Welfare*, 535 F.2d 1291 (D.C. Cir. 1976), is similarly off point.  *Haneke* relies upon *Seaton v. Texas Company* to note that courts may have to make a legal judgment to determine whether a given duty is, in fact, ministerial.  *See Haneke*, 535 F.2d at 1296–97 n. 16 (citing *Seaton v. Texas Co.*, 256 F.2d 718, 723 (D.C. Cir. 1958)).  But *Seaton* did not even involve a claim to compel agency action otherwise withheld.  *See* 256 F.2d at 723–24 ("We are not asked to direct the disposal of an interest in the public lands against the will of the Secretary."); *see also Wilbur v. United State ex rel. Kadrie*, 281 U.S. 206, 216 (1930) (seeking review of decisions already made by the Secretary of the Interior).

to be taken into trust would eliminate the opportunity, promulgated by regulation (*see* 25 C.F.R. § 151.12(b)), to challenge land-into-trust decisions in federal court. Absent that opportunity, the Quiet Title Act precludes such review. *See* 28 U.S.C. § 2409a(a) (preserving the United States' sovereign immunity from suit); *United States v. Mottaz*, 476 U.S. 834, 842 (1986); *Governor of Kan. v. Kempthorne*, 516 F.3d 833, 841–43 (10th Cir. 2008); *Sac & Fox Nation of Mo. v. Kempthorne*, No. 96-4129, 2008 WL 4186890, at *2–8 (D. Kan. Sept. 10, 2008).

Plaintiff's statement that further judicial review is unnecessary ignores several important factors. *See* Pl.'s Resp. Mem. at 39. There is no guarantee that all interested or potentially affected members of the public have notice of the present suit, particularly since the regulatory process suggests they await public notice of the acquisition. *See* 25 C.F.R. § 151.12(b). And Plaintiff itself has opposed the intervention of one such entity. *See* Doc. No. 43.

Plaintiff's suggestion that the Court could simply order the Department to publish notice of the acquisition pursuant to 25 C.F.R. § 151.12(b) and allow thirty days for judicial challenge misses the point. *See* Pl.'s Resp. Mem. at 39–40. Because there would be no agency decision to review, jurisdiction under the APA would be problematic. The only agency action taken would be that which the Court had directed, leaving no further agency decision-making. A party could not make a claim in district court that this Court erred in deciding Parcel 2 was eligible under the Lands Replacement Act. This would effectively place any subsequent district judge in the position of reviewing this Court's ruling rather than reviewing agency action.

Instead, proper judicial review of any land-into-trust decision should come after the Department considers the issues and arrives at a reasoned determination. Seeing the administrative process to its end would give this Court, or any other, the benefit of both the

- 11 -

agency's documented conclusions and the administrative record in support thereof.  All while affording Plaintiff, the City of Glendale, the Gila River Indian Community, and any other interested or affected parties the opportunity to make the very same substantive arguments currently being made.  At the end of the day, the Department of the Interior may very well agree with Plaintiff's interpretation of the Lands Replacement Act with respect to Parcel 2.  But the Department holds the authority to make that determination.

**III.    Portions of Plaintiff's Requested Relief Ask the Court to Retain Jurisdiction Over Department Action For Which the Court Does Not Have Jurisdiction in the First Instance.**

Plaintiff continues to assert—in a single footnote—that this Court can retain jurisdiction to oversee the Department's review of Plaintiff's potential future requests to take remaining portions of the 134-acre property into trust.  *See* Pl.'s Resp. Mem. at 43 n.31.  Plaintiff is certainly correct that a court's powers include the ability to "retain[ ] jurisdiction after entering judgment in a suit that was properly <u>brought</u>."  Pl.'s Resp. Mem. at 43 n.31 (emphasis added).  Plaintiff, however, has only <u>brought</u> suit to compel the Department to act on Parcel 2.  The Department's eventual action with respect to the remaining parcels is outside the scope of this suit and the possible claims of future plaintiffs, and the Court's continuing jurisdiction would therefore be inappropriate.

## CONCLUSION

Based upon the foregoing and the arguments set forth in Defendant's opening brief,

Defendant's cross-motion for summary judgment should be granted.


Respectfully submitted this 27th day of May, 2010,

IGNACIA S. MORENO
Assistant Attorney General

_s/ Kristofor R. Swanson_

EDWARD J. PASSARELLI
Assistant Section Chief

KRISTOFOR R. SWANSON
Trial Attorney
Tel: (202) 305-0248
kristofor.swanson@usdoj.gov

J. NATHANAEL WATSON
Trial Attorney
Tel: (202) 305-0475
joseph.watson@usdoj.gov

Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, DC 20044
Fax: (202) 305-0506

OF COUNSEL:

MARIA WISEMAN
VINCENT WARD
ADRIENNE HILLERY
U.S. Department of the Interior
Office of the Solicitor
Washington, DC

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2010, Defendant's Reply in Support of Cross-Motion for Summary Judgment was filed with the United States District Court for the District of Columbia's electronic filing system, to which the following attorneys are registered to be noticed:

Danielle Mary Spinelli
danielle.spinelli@wilmerhale.com

Edward C. DuMont
edward.dumont@wilmerhale.com

Seth P. Waxman
seth.waxman@wilmerhale.com

Audrey Elaine Moog
amoog@hhlaw.com

James T. Meggesto
jmeggesto@akingump.com

Dana C. Boehm
dcboehm@hhlaw.com

James P. Tuite
jtuite@akingump.com

Merrill C. Godfrey
mgodfrey@akingump.com


*s/ Kristofor R. Swanson*
Kristofor R. Swanson